Raymond C. OLSON, Appellant,

v.

Florence M. OLSON, Appellee.

No. S–5087.

Supreme Court of Alaska.

July 23, 1993.

Andrew J. Fierro, Kemppel, Huffman & Ginder, Anchorage, for appellant.

Allen M. Bailey, Anchorage, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

The question presented in this appeal is whether the appellant's loss of employment constitutes sufficient grounds for modifying a divorce decree. We hold that it does not in this instance, and affirm the superior court's denial of Raymond Olson's motion to modify the decree.

## I. FACTS AND PROCEEDINGS BELOW

Raymond and Florence Olson were married in July 1976 in Anchorage. At the time of their marriage, Florence worked for the federal civil service and Raymond worked for ARCO. Florence retired in 1982; Raymond worked for ARCO throughout the parties' marriage.

When Florence filed for divorce in October 1990, she was 68 years old and Raymond was 58. Her monthly gross income, consisting of her retirement pay and her state longevity bonus, was $600. Raymond's monthly gross income was $5,436. Both parties claimed considerable monthly expenses.

The parties agreed to a property settlement in June 1991. They presented their agreement to Superior Court Judge Elaine Andrews in open court on June 21, 1991. Under the agreement, Raymond received the parties' Mercedes, their Anchorage residence and furniture, two Washington lots, a pick-up, a Plymouth, and a $13,500 "credit" for interim spousal support to be applied to his amended tax returns. Raymond was also to receive reimbursement from Florence for medical expenses paid by Raymond and reimbursed to Florence by her insurance carrier. Florence received the escrow account for an Anchor Point property sale, a Plymouth, and the remainder of her pension. The parties' equally divided Raymond's IRA, their art and jewelry, their Washington marital property, and Raymond's ARCO retirement, savings and investment plans.

A divorce decree, which incorporated the property settlement, was signed on August 9, 1991. On August 28, Florence filed a motion for attorney's fees. Raymond filed his opposition on September 11.

In September 1991, ARCO notified Raymond that it was terminating him as part of a reduction in force program effective November 30. Raymond thereafter filed a supplemental opposition to the attorney's fees motion, arguing that, due to his termination, the relative economic situations of the parties no longer provided any basis for an attorney's fee award. In November, the superior court awarded Florence $5,000 in attorney's fees.

In January 1992, Raymond moved to modify the August 9th divorce decree, arguing that his sudden dismissal justified modifying the property division under Civil Rule 60(b)(1), (2), (5) and (6). This motion was denied, without comment, by Superior Court Judge John Reese. Raymond appealed both the denial of his motion to modify the decree and the attorney's fee award.

## II. DISCUSSION

### A. Motion to Modify.

■ Raymond first argues the case must be remanded because the superior court failed to issue findings of fact when it denied his motion to modify.[1] The Civil Rules do not require the superior court to issue findings of fact when ruling on a Rule 60(b) motion to modify. See Alaska R.Civ.P. 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 and 56 or any other motion except as provided in Rule 41(b)."). In *Headlough v. Headlough*, 639 P.2d 1010, 1014 (Alaska 1982), we remanded for findings when the superior court failed to explain why it granted a Rule 60(b) motion to modify a divorce decree. We held that such findings were necessary in order "to enable this court to determine the grounds upon which the trial

---

1. Raymond moved to modify pursuant to Alaska R.Civ.P. 60(b)(1), (2), (5), and (6), which read in part:

   (b) On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons:
   (1) mistake, inadvertence, surprise or excusable neglect;

   (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)
   ....
   (5) ... it is no longer equitable that the judgment should have prospective application; or
   (6) any other reason justifying relief from the operation of the judgment.

court reached its decision." *Id.* In part, we remanded because "we [were] unable to determine the reasons for the trial court's decision to increase [the husband's] support payments." *Id.*

The present case is distinguishable from *Headlough* because, here, we are reviewing a denial, not a grant, of a motion to modify the decree. In the case at bar, we can examine the entire record, and can measure the denial against the abuse of discretion standard without findings.

[2, 3] Addressing the merits, we note first that Raymond's Civil Rule 60(b)(1) and (2) arguments are without merit. Raymond argues that his dismissal amounts to a "surprise" sufficient to constitute grounds for relief under Rule 60(b)(1). We read and define the term "surprise" in light of the three other grounds for relief under Rule 60(b)(1), to wit, "mistake, inadvertence, ... or excusable neglect."[2] Alaska R.Civ.P. 60(b)(1). Courts have traditionally applied this section to cover events that occur prior to entry of judgment, such as faulty filings or miscommunications that result in no actual knowledge of the proceedings, and not to those events which post-date the judgment. *See generally* 11 Charles Wright & Arthur Miller, *Federal Practice and Procedure*, § 2858 (1973 and Supp.1993). We will not extend Rule 60(b)(1) beyond its conventional ambit to cover Raymond's post-decree dismissal.

Raymond's "newly discovered evidence" argument, made under Rule 60(b)(2), fails for the same reason. In the context of a motion for a new trial, we have held that "for any evidence to come within the category of 'newly discovered' such evidence must relate to facts which were in existence at the time of the trial." *Patrick v. Sedwick,* 413 P.2d 169, 177 (Alaska 1966). The same reasoning applies to motions to modify under Rule 60(b)(2). *See* 11 Wright and Miller, *Federal Practice and Procedure,* at § 2859. Raymond suggests large scale termination decisions, such as ARCO's, are "normally made well

in advance of any announcement" and that therefore "it can be presumed" that his termination was "in existence" at the time of the settlement agreement on June 21, 1991. Such conjecture does not supplant the hard fact that Raymond was not notified of his termination until September 23, 1991, a full three months after the parties agreed to a property division. Therefore, Rule 60(b)(2) does not apply.

Civil Rule 60(b)(5) offers relief from judgment when "it is no longer equitable that the judgment should have prospective application." Alaska R.Civ.P. 60(b)(5). Only two components of the property settlement in the present case had prospective application; namely, the monthly escrow payments from the Anchor Point property sale and the monthly annuities resulting from the division and distribution of Raymond's ARCO pension plan. The ARCO pension plan was distributed upon Raymond's termination. Although the parties agreed to an equal division of this asset, Raymond's monthly annuities are actually significantly higher than Florence's as a result of an "enhanced retirement benefit" due to his termination. It is indisputable that the escrow payments from the Anchor Point property sale provide Florence with significant income. However, we fail to see how Raymond's sudden termination makes the distribution of this asset any more inequitable than it already was when the parties agreed to it. Given the fact that Raymond received an "enhanced retirement benefit" upon termination, and given the substantial assets he received as a result of the property settlement agreement, we do not agree with his contention that his termination placed him in an inferior economic position to that of Florence.

Finally, Raymond's Civil Rule 60(b)(6) argument is without merit. We have cited four factors which constitute "extraordinary circumstances" justifying relief from a property division under Rule 60(b)(6):

---

**2.** Under the doctrine of *noscitur a sociis,* the meaning of questionable or doubtful words in a statute may be ascertained by reference to the meaning of other words or phrases associated with it. *Wong Kam Wo v. Dulles,* 236 F.2d 622, 626 (9th Cir.1956).

(1) the fundamental, underlying assumption of the dissolution agreement ha[s] been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the [asset in controversy] was the parties' principal asset.

*Clauson v. Clauson,* 831 P.2d 1257, 1260 (Alaska 1992) (quoting *Lowe v. Lowe,* 817 P.2d 453, 458–59 (Alaska 1991)). In *Clauson,* we noted that these four factors "are not strictly necessary conditions but, rather, are particular instantiations of the equitable factors required to overcome the principle that, at some point, 'litigation [must] be brought to an end.' " *Id.* at 1261 (quoting *Lowe,* 817 P.2d at 459). That is, the cited factors are merely illustrative, and are not intended to be an exclusive list of "extraordinary circumstances" justifying relief under Civil Rule 60(b)(6). Raymond argues that his termination "destroyed the underlying basis for [Raymond's] agreement to the settlement terms." Raymond contends that the property settlement agreement was premised on his ability to remain employed with ARCO in order to continue making the mortgage payments on the three pieces of real property that he agreed to take, payment of outstanding marital liabilities, and continued contributions to his retirement which he agreed to evenly divide with Florence. As Raymond concedes, this premise is not stated anywhere in the findings of fact, conclusions of law, or the divorce decree. While we have no doubt that Raymond did not expect to be terminated, we are hesitant to disturb a final judgment where there is nothing in the record to support Raymond's "underlying assumption" theory.

We affirm the superior court's denial of Raymond's motion to modify the divorce decree.

**B. *Attorney's Fees.***

After announcing and approving the parties' settlement agreement, the superior court instructed Florence to move for fees. The ensuing motion included a lengthy billing statement, with fees and costs totalling $6,950, "exclusive of what Florence already paid." In opposing the motion, Raymond noted his termination and argued that awarding attorney's fees to Florence was no longer appropriate. The superior court awarded Florence $5,000 in attorney's fees on November 20, 1991. Raymond did not appeal the attorney's fees award until April 13, 1992, contemporaneous with his appeal of the denial of the motion to modify.

Appellate Rule 204(a)(1) requires an appellant to file a notice of appeal "within 30 days from the date shown in the clerk's certificate of distribution on the judgment appealed from." The clerk's certificate on the November 20, 1991 judgment indicates that it was distributed to the parties on November 20, 1991. Raymond thus had until December 20, 1991 to appeal the attorney's fees award. Raymond's motion to modify the divorce decree, filed on January 17, 1992, did not toll or affect the deadline for appealing the judgment awarding attorney's fees. *See Pearson v. Bachner,* 503 P.2d 1401, 1402 (Alaska 1972) (Rule 60(b) motion is not a substitute for an appeal of a judgment). Raymond's appeal of the superior court's attorney's fees award is therefore dismissed as untimely.

AFFIRMED.