**Tommy R. LOWE, Appellant,**

v.

**Linda R. LOWE, Appellee.**

**No. S–6995.**

Supreme Court of Alaska.

Aug. 15, 1997.

J. Mitchell Joyner, Law Office of J. Mitchell Joyner, Anchorage, for Appellant.

Charlene Lichtmann, Nicholasville, KY, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

COMPTON, Chief Justice.

## I. FACTS AND PROCEEDINGS

Linda R. Lowe and Tommy R. Lowe were married in 1965. They filed a Petition for

Dissolution of Marriage in the superior court in July 1984. They had two minor children at the time. The petition made no mention of a marital residence in Abilene, Texas, or of military retirement benefits which Tommy possessed. Linda signed a quitclaim deed for the marital residence at the time she signed the dissolution petition. The superior court issued a Decree of Dissolution of Marriage in September 1984.

In July 1987, Linda filed a motion to modify and enforce the decree of dissolution. She sought modification of the child custody agreement, as the children had lived with her, not Tommy, during the school years since separation, contrary to an agreement she and Tommy made at the time of the dissolution. She also sought child support and payment from Tommy of an amount representing her estimate of one half of the value of the marital residence. She claimed that she and Tommy had an unwritten agreement regarding an equal division of the proceeds from the sale of the residence, that Tommy had not followed through on the sale, and that she wanted her share. In June 1989, almost two years later, Linda and Tommy settled issues relating to custody and visitation.

In May 1989, prior to settlement of the child custody and visitation issues, Linda moved for relief from judgment, pursuant to Alaska Civil Rule 60(b). She requested that the court set aside the property settlement and award her a share of Tommy's retirement benefits. The superior court amended the decree in February 1990, awarding Linda a share of these benefits. Tommy appealed.

On appeal, we observed that "[t]here is no dispute that the dissolution petition provided that Tommy would have primary custody of the children and that Linda in fact had primary custody after the dissolution." *Lowe v. Lowe,* 817 P.2d 453, 458 (Alaska 1991)(*Lowe I* ). We held that "[t]his provides a valid basis for modifying the dissolution decree under subsection (6) of Rule 60(b)." *Id.* We remanded the case to the superior court with the following instructions, however:

> [A] motion under subsection (6) of Rule 60(b) must be made within a "reasonable time." [*Schofield v. Schofield,* 777 P.2d 197, 202 (Alaska 1989).] We cannot say that a motion for relief made four and a half years after entry of judgment is per se unreasonable. *See id.* (Rule 60(b)(6) motion made eight years after judgment was made within a reasonable time.). Since the superior court made no reference to the timeliness of Linda's motion in either its oral or written decision, we remand the case to the superior court for a determination of whether Linda's motion was made within a reasonable time. In determining what is a reasonable time for purposes of Rule 60(b), the superior court should take into account the purposes of the rule: "Rule 60(b), in its entirety, attempts to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts." [*Livingston v. Livingston,* 572 P.2d 79, 85 (Alaska 1977).] It is undisputed that the key fact justifying relief, that the children did not go to live with Tommy as contemplated, arose immediately after the dissolution.

*Lowe I,* 817 P.2d at 459.

On remand, the superior court determined that Linda's motion for relief from judgment had been made within a reasonable time. It made the following written findings in support of this determination:

> 11. During the course of the custody litigation, Mrs. Lowe learned that Mr. Lowe did not intend to follow through on his agreement for the division of the marital home. At the time the parties executed the Petition for Dissolution, the parties had an agreement, according to Mrs. Lowe's testimony, that the marital home located in Abilene, Texas, be sold and proceeds equally divided. After the dissolution, Mr. Lowe assured Mrs. Lowe on a number of occasions that he was making improvements to the home so that it could be sold.
>
> 12. I find that after the dissolution Mrs. [Lowe] had a reasonable belief that Mr. Lowe was working toward a resolution of the property issue concerning the marital home; that Mrs. Lowe reasonably relied upon these assurances and that in view of this there is a sufficient explanation for the

delay in the filing of the Civil Rule 60(b) Motion. The custody litigation began in July, 1987 and ended in June, 1989. Sometime between those dates, it became clear to Mrs. Lowe that Mr. Lowe was not going to sell the home, and I find that she acted promptly in raising this issue during the course of the litigation and that, under the circumstances, the delay in filing the Civil Rule 60(b) motion in May, 1989 was not an unreasonable one.

13. This is not a case where one party attempts to resurrect and retract a divorce settlement 10 to 15 years after the fact. The parties to this action have been in some form of litigation or dispute since the day they were divorced. Given this, the principle of finality of litigation is entitled to less weight than the conflicting principle that justice be done in light of all the facts.

In its oral findings, the superior court further stated "that legally this may not make a lot of sense, but I think probably what happened was that there was a thinking that if I get half the house I don't really need his retirement, but if I don't get half the house, then I do want his retirement."

The court issued its amended final judgment in February 1995. Once again, Tommy has appealed. As a condition of his appeal, the superior court required Tommy to pay Linda half of his net disposable retirement pay each month until the appeal is resolved.

## II. *DISCUSSION*

### A. *Standard of Review*

██ We will not disturb a trial court's grant of a Rule 60(b) motion except upon a showing of an abuse of discretion. *Gravel v. Alaskan Village, Inc.*, 423 P.2d 273, 277 (Alaska 1967). "On the other hand, whether the trial court applied the appropriate legal standard in exercising its broad discretion is a question of law regarding which this court may substitute its independent judgment on appeal." *Laing v. Laing*, 741 P.2d 649, 651 (Alaska 1987). *Lowe I*, 817 P.2d at 456–57. Findings of fact will be reversed as clearly erroneous only "if, based on the record as a whole, the court is left with a definite and firm conviction that a

mistake has been made." *Headlough v. Headlough*, 639 P.2d 1010, 1011 (Alaska 1982).

### B. *Civil Rule 60(b)(6)*

Civil Rule 60(b) provides in part that

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) *any other reason justifying relief from the operation of the judgment.*

*The motion shall be made within a reasonable time,* and for reasons (1), (2) and (3) not more than one year after the date of notice of the judgment or orders as defined in Civil Rule 58.1(c).

Alaska R. Civ. P. 60(b) (emphasis added).

"Clause (6) is reserved for extraordinary circumstances not covered by the preceding clauses." *O'Link v. O'Link*, 632 P.2d 225, 229 (Alaska 1981). "Rule 60(b) in general, and clause (6) in particular, should be liberally construed to enable courts to vacate judgments whenever such action is necessary to accomplish justice." *Id.* at 230. However, "Rule 60(b), in its entirety, attempts to preserve the delicate balance between the conflicting principles that litigation be brought to an end and that justice be done in light of all the facts." *Livingston v. Livingston*, 572 P.2d 79, 85 (Alaska 1977).

C. *The Superior Court Did Not Err In Concluding that Linda's Delay in Moving for Relief from Judgment Was Reasonable.*

■ The superior court correctly determined that Linda had relied on Tommy's assurances about the sale of their marital home. It also correctly determined that Linda's delay in filing a Rule 60(b) motion was reasonable based on this reliance. The superior court's conclusion that the delay was reasonable is also supported by the uncertainty arising from the unresolved custody dispute between Linda and Tommy.

1. *The superior court correctly determined that Linda had reasonably relied on Tommy's assurances at the time of the dissolution of their marriage.*

Linda affied in July 1987 that Tommy had "not had the house listed with a real estate agent and does not intend to sell it anytime soon." In September 1987, she further stated that

> After the divorce, [Tommy] reassured me on a number of occasions that he intended to sell the home and cash me out. At one point he offered to pay me in monthly installments but I now believe he will not sell the home or make provision to pay me my portion unless he is ordered to do so.

Linda testified on remand that Tommy "assured me clear up—*I believe up until '87,* off and on, that he would sell that house." Linda's statements indicate that by September 1987, Linda no longer believed that Tommy would follow through on any subsequent "assurances" he might have made, and that according to Linda's recollection, such assurances ceased about that time.

On remand, the superior court accepted as true Linda's testimony that, at the time the Lowes petitioned for dissolution, they had an agreement that the marital residence would be sold and the proceeds evenly split.[1] It found that only later "Mrs. Lowe learned that Mr. Lowe did not intend to follow through on his agreement for the division of the marital home."

The court found that "[a]fter the dissolution, Mr. Lowe assured Mrs. Lowe on a number of occasions that he was making improvements to the home so that it could be sold." Because "Mrs. Lowe reasonably relied upon these assurances," the court found that "there is a sufficient explanation for the delay in the filing of the Civil Rule 60(b) Motion." Read literally, the superior court's finding simply states that "after the dissolution" Linda reasonably believed that Tommy "was working toward a resolution of the property issue concerning the marital home," that she "reasonably relied [on Tommy's] assurances," and that "in view of this there is a sufficient explanation for the delay in the filing of the Civil Rule 60(b) motion." The court's findings are supported by the record and are not clearly erroneous.

2. *The superior court did not err in deciding the delay was reasonable.*

On the basis of these findings, the superior court concluded that "under the circumstances, the delay in filing the Civil Rule 60(b) Motion in May, 1989 was not an unreasonable one." It further concluded that although an additional twenty-two months elapsed between July 1987, and May 1989, Linda "acted promptly in raising this issue during the course of the litigation."

Linda was pursuing other legal approaches between 1987 and 1989. She had filed the motion to modify and enforce the judgment in July 1987, which Tommy then opposed for two years. In that motion she sought modification of the judgment with respect to disposition of the residence, seeking $18,000 for her interest in it. Insofar as the delay between 1987 and 1989 can be justified by the fact that Linda "acted promptly in raising this issue during the course of the litigation," it is clear that she was asserting an interest in the residence even before she concluded that whatever interest she had in it was of

---

1. While the superior court acknowledged in its findings that the existence of the alleged agreement was "according to Mrs. Lowe's testimony," it accepted her testimony on this issue as true, stating without qualification that "Mrs. Lowe learned that Mr. Lowe did not intend to follow through on his agreement."

little value to her, and that she was going to have to find another asset from which to obtain a fair adjustment of her own interests.

The motion for relief from judgment was brought at a reasonable point in the proceedings. The superior court did not abuse its discretion in arriving at this conclusion.

3. *The unresolved custody dispute also supports the superior court conclusion that Linda's delay was reasonable.*

While the superior court's written findings base reasonable delay on "assurances" regarding the residence, Linda also argues that "the dispute over the house was only one of the factors [the superior court] utilized in supporting [its] findings." She points to the court's oral finding that "I find most reasonable the notion and the testimony that there was—that at the time of the divorce in 1984 and up until—well, and up until '89 there was an unresolved custody dispute."

The superior court does not explicitly present this "factor" as an alternative basis justifying the delay, although it does state in its written findings that "Mrs. Lowe did not know whether Mr. Lowe would send for the children and from the time of the dissolution until 1989 there was an unresolved custody dispute between the parties." The superior court also stated, in its oral findings, that

I think that there is an explanation for the delay. As I've indicated, we have [a] kind of reliance [on] how this thing is really going to work out, reliance on things will be done, we're working towards selling the house, *a fear of bringing the custody dispute to a head.*

Like the explanations that revolve around the status of the residence, the unresolved custody dispute provides an additional explanation why Linda delayed bringing her motion until May 1989.

The custody and visitation dispute was resolved in June 1989,[2] one month after Linda moved for relief from judgment. Since the superior court found that "Mrs. Lowe did not know whether Mr. Lowe would send for the children," we cannot say that it was not reasonable for Linda to refrain from moving for relief from judgment until after it had become clear that she would have primary custody of Tiffany, their daughter.[3] Had Tommy taken Tiffany back, "the fundamental, underlying assumption of the dissolution agreement"—"that Tommy would have primary custody of the children"—would not have evaporated, and relief from judgment under Civil Rule 60(b) might not have been supportable otherwise. *Lowe I,* 817 P.2d at 458. While "[i]t is undisputed that the key fact justifying relief, that the children did not go to live with Tommy as contemplated, arose immediately after the dissolution," *id.* at 459, it is also undisputed that the custody dispute over Tiffany remained unsettled until about the time Linda moved for relief from judgment. Tommy has not appealed the trial court's finding that Linda "did not know whether Mr. Lowe would send for the children," *i.e.,* Tiffany, during that time. The record supports the conclusion that Linda reasonably waited until she knew she would secure primary custody of Tiffany before moving for relief from judgment based upon the change in fundamental underlying assumptions regarding custody.[4]

The written findings of the superior court rely solely on the status of the residence to explain why Linda's delay was reasonable. " 'Generally, where inconsistencies exist between a court's written findings and its oral

---

2. The superior court found that the Lowes settled the custody dispute in June 1989. This would appear to conflict with the 1990 finding that the custody dispute was settled in June 1988. However, since the settlement agreement was clearly dated June 1989, and was attached to the 1990 findings of the superior court, it is clear that "1988" was a typographical error.

3. Tony, the Lowes' other minor child at the time of the dissolution, had already reached majority by 1989. Thus, the Lowes' 1989 settlement provided that Linda "shall have sole legal and pri-

mary physical custody of Tiffany Lowe," and made no provisions for Tony.

4. In reaching this conclusion, it is not problematic that Linda moved for relief from judgment a month *before* the custody dispute was resolved. The dispute was resolved by settlement, and it is reasonable that Linda might have realized, during the course of negotiations and a month before the actual execution of the settlement agreement, that she would be receiving primary custody.

statements, the written findings control.'" *Schofield v. Schofield,* 777 P.2d 197, 202 n. 5 (Alaska 1989)(quoting *K.T.E. v. State,* 689 P.2d 472, 477 (Alaska 1984)). Furthermore, it is correct that the superior court never clearly explained, in either its oral or written findings, just how the "unresolved custody dispute" could provide an alternative basis for its finding of reasonable delay, although it hinted that this might be the case. However, we note that these findings are not inconsistent. They provide separate, though not mutually exclusive, bases for concluding that the delay was reasonable.

### D. The Issue Whether the Superior Court Could Condition Tommy's Appeal upon Monthly Payments Is Moot.

Tommy appeals the superior court's requirement that he pay half of his disposable retirement income each month to Linda as a condition of his appeal. Although he filed a cost bond, pursuant to Appellate Rule 204(c), he did not request a supersedeas bond pursuant to Appellate Rule 204(d). He acknowledges that a bond under Rule 204(c) does not stay the enforcement of a judgment, and that Linda was free to seek direct payment of his retirement benefits from the Air Force, Tommy's former employer. The Air Force refused to make such payments, however, because the judgment was under appeal. He argues that this refusal "was a matter out of Tommy's control," and that because the court ordered him to make direct payments to Linda instead of depositing money with the court, the requirement of monthly payments was error.

"Whenever in a civil case an appellant entitled thereto desires a stay on appeal, the appellant may present to the superior court for its approval a supersedeas bond...." Alaska R.App. P. 204(d). Tommy could have complied with this rule, had he wished to avoid the judgment being executed.

■ In view of our resolution of the correctness of the superior court's ruling on the Rule 60(b) motion, this issue is moot.[5]

### E. The Superior Court Did Not Err in Awarding Attorney's Fees.

The superior court awarded attorney's fees and costs to Linda, stemming from the 1990 proceedings before the superior court.[6] We perceive no abuse of discretion in this award.

## III. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

5. We note that regardless of how tempting it may be to engage in creative post-judgment assistance, the Rules of Civil Procedure and the Alaska Statutes are the source of the trial court's power to enforce or stay execution of judgments. In this instance, the superior court impermissibly conditioned Tommy's right to obtain appellate review on his continued payment of half of his net disposable retirement pay to Linda during the pendency of the appeal.

6. This court had held, in *Lowe I,* that "[i]f Linda prevails on remand, the [superior] court must ... reconsider the [1990] attorney's fee award." 817 P.2d at 460. The superior court did this. It required "[e]ach party to bear their own costs and fees associated with the remand," however.