Debra A. McGEE, Appellant,

v.

Kenneth R. McGEE, Appellee.

Kenneth R. McGee, Appellant,

v.

Debra A. McGee, Appellee.

Nos. S–7965, S–7966.

Supreme Court of Alaska.

March 12, 1999.

---

Paul M. Hoffman, Robertson, Monagle & Eastaugh, P.C., Juneau, for Debra A. McGee.

Robert S. Spitzfaden, Gruening & Spitzfaden, APC, Juneau, for Kenneth R. McGee.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

The decree dissolving Debra and Ken McGee's marriage said nothing about possible individual fishing quotas (IFQs) and quota shares. When an IFQ program was implemented soon after the dissolution, Ken applied for and received all the shares. Because marital fishing activity made both parties eligible to receive the shares, Debra successfully moved for relief from the dissolution decree. Concluding that "extraordinary circumstances" justified Alaska Civil Rule 60(b)(6) relief, we affirm in Case No. S–7966.

Debra also brought a separate tort suit against Ken, alleging that his IFQ application misrepresented facts that made him eligible to receive all the shares. The superior court dismissed the tort suit on the ground it was barred by the Rule 60(b) proceedings. Because Debra could not have asserted her tort claims in the dissolution and Rule 60(b) proceedings, we hold that res judicata does not apply, and reverse and remand in Case No. S–7965. Since the Rule 60(b) relief collaterally estops Debra from relitigating her quota shares claim, only her punitive damages claim remains for litigation on remand.

### II. FACTS AND PROCEEDINGS

#### A. Facts

Ken and Debra McGee married in 1978. They bought the F/V Tamarack in 1980, and fished for salmon, halibut, and sablefish (black cod) in Southeast Alaska. Both signed the promissory note that financed the vessel's purchase, and the Coast Guard Certificate of Ownership of Vessel listed them both as equal owners. Both participated actively, but differently, in the fishing business.

They filed for dissolution in March 1993. Their property settlement divided their marital assets. The petition listed their house (valued at $150,000) as their largest asset, and the F/V Tamarack (valued at $80,000) as their third largest. The boat was listed as

joint property to be awarded to Ken. The property settlement did not discuss quota shares or individual fishing quotas. The court dissolved the marriage in April 1993.

In December 1993 the National Marine Fisheries Service (NMFS) implemented a system of individual fishing quotas in Alaska's halibut and sablefish fisheries. Previously, anyone with a boat and commercial license could participate in the halibut fishery. But under the IFQ system, only fishers possessing quota shares could fish for halibut and sablefish, making the shares very valuable.[1] A quota shares applicant had to show that he or she had owned or leased a vessel that made legal and verifiable landings of halibut or sablefish in the IFQ regulatory areas during 1988, 1989, or 1990.[2] The base years are 1984 through 1990 and the qualifying years are 1988, 1989, and 1990. During all base and qualifying years, Debra co-owned the F/V Tamarack with Ken.

The NMFS mailed Ken a preprinted "Request for Application for Quota Share Form for Individuals" in December 1993. Debra never received this mailing, and Ken never advised Debra that he had received it. Ken signed the form and submitted it with a form identifying himself as the owner of the F/V Tamarack.

The NMFS then sent Ken preprinted halibut and sablefish quota share applications that listed his eligible dates as February 3, 1984, to December 31, 1991, and his percent of interest in the F/V Tamarack's activities as 100 percent. This was accurate as of 1994, but not as of the listed eligible dates. Despite this discrepancy, Ken signed the form in June 1994 and returned it to the NMFS. The NMFS issued Ken all the quota shares.

Debra did not apply for quota shares and therefore received none. She alleges that she first learned in October 1994, after the application period ended, that the program had been implemented and that Ken was going to receive quota shares. Ken contends that when they agreed to the property divi-

---

1. We described the IFQ program in *Ferguson v. Ferguson*, 928 P.2d 597, 598 (Alaska 1996).

2. *See* 50 C.F.R. § 679.40(a)(2)(A) (1999).

sion in 1993, Debra was aware of the possibility the IFQ program might be implemented.

### B. *Proceedings*

#### 1. *Debra's Civil Rule 60(b) application*

In February 1995, after the application period had closed and Ken had received the quota shares, Debra filed a Rule 60(b) motion in the dissolution proceeding to modify the dissolution decree. She claimed that she was entitled to one-half of the F/V Tamarack's quota shares or their reasonable value. Debra contended that the quota shares were worth "not less than $700,000"; Ken contended that they were worth "no more than $300,000."

Superior Court Judge Walter L. Carpeneti granted Rule 60(b)(6) relief on May 29, 1996, and on December 23, 1996, entered final judgment awarding half of the quota shares and related IFQ's to Debra. The court also awarded Debra $24,106 in attorney's fees. Ken appeals these rulings in Case No. S–7966.

#### 2. *Debra's tort suit*

During discovery conducted for her Rule 60(b) motion, Debra learned that Ken had acquired all the quota shares by misrepresenting critical facts to the NMFS. Ken conceded that he had misrepresented his ownership of the F/V Tamarack to the NMFS, but claimed it was an innocent mistake, not a willful misrepresentation. In June 1996 Debra commenced a new action by filing a complaint against Ken based on Ken's misrepresentation. She sought an order requiring Ken to transfer to Debra one-half of his quota shares and IFQs for the current year and to disgorge profits gained by using Debra's quota shares and IFQs. She also sought punitive damages and attorney's fees. Although the complaint alleged that Ken had "wrongfully converted" fifty percent of the quota shares and IFQs, the parties and the court thereafter referred to Debra's action as

one for replevin. We refer to it as her "tort action" or "tort suit."

After the parties stipulated to dismissal of Debra's claims for Ken's use of the IFQs and quota shares, Ken moved for summary judgment. Superior Court Judge Thomas M. Jahnke dismissed the tort action holding that Debra had "impermissibly split her causes of action," that the matter was moot, and that the second claim was "merged with the dissolution case, and barred by the decision in the dissolution case." The court awarded Ken attorney's fees and costs. Debra appeals these rulings in Case No. S–7965.

### III. *DISCUSSION*

#### A. *The Superior Court Did Not Abuse Its Discretion in Granting Rule 60(b)(6) Relief.*

#### 1. *Standards of review*

Ken argues that Judge Carpeneti erred when he determined that the quota shares were divisible marital property. "Determining what property is available for distribution may involve both legal and factual questions. Legal questions decided by a subordinate court are reviewed de novo; we 'adopt the rule of law that is most persuasive in light of precedent, reason and policy.' "[3] "Factual determinations made by a trial court may be set aside only if clearly erroneous."[4]

Ken claims that the superior court erred by granting Debra's motion under Rule 60(b)(6). "We will not disturb a trial court's grant of a Rule 60(b) motion except upon a showing of an abuse of discretion."[5] The court will find an abuse of discretion only when "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[6]

Ken also argues that the superior court abused its discretion by awarding attorney's fees to Debra. "An award of attorney's fees will only be reversed for an abuse of discre-

**3.** *Bellanich v. Bellanich,* 936 P.2d 141, 143 (Alaska 1997) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

**4.** *Id.* (citing Alaska R. Civ. P. 52(a)).

**5.** *Lowe v. Lowe,* 944 P.2d 29, 31 (Alaska 1997) (citing *Gravel v. Alaskan Village, Inc.,* 423 P.2d 273, 277 (Alaska 1967)).

**6.** *Buster v. Gale,* 866 P.2d 837, 841 n. 9 (Alaska 1994) (quotation omitted).

tion, which exists if the award is arbitrary, capricious, manifestly unreasonable, or the result of an improper motive."[7]

### 2. The quota shares and IFQs are property.

■ A dissolution decree distributes "all jointly owned real and personal property" that was "acquired only during marriage."[8] We held in *Ferguson v. Ferguson* that quota shares distributed during marriage are divisible marital property.[9]

On the theory the quota shares and IFQs were not divisible marital property because they did not exist when the court entered the dissolution decree, Ken argues that the court erred by granting Rule 60(b) relief. He contends that the potential right to quota shares was far too speculative to be considered marital property when the court dissolved the marriage, and that *Ferguson* is inapposite because the Fergusons were divorced *after* the quota share program was implemented.

■ We reject these contentions. The quota shares are marital property even though the quota share program did not exist when the decree was entered. The program established a right to receive property (the quota shares and IFQs) based on the vessel's activity in the qualifying years while Debra and Ken were married. The quota shares were based on their joint efforts during the marriage, and are thus analogous to income or assets received for activities during the marriage. Income and assets received after the dissolution for activities performed during the marriage are deemed divisible marital property.[10]

Moreover, in *Ferguson* we held that the husband had a separate property interest in IFQs awarded "based on work he had performed prior to the marriage" long before the IFQ program was implemented.[11]

■ Ken cites cases holding that potential government benefits are speculative and are therefore not divisible property.[12] We think these cases are inapposite. Once the NMFS chose to implement its proposed quota share program, the McGees' right to receive quota shares and IFQs was not at all speculative. The only uncertainty was whether the NMFS would adopt the program; that uncertainty is insufficient to defeat Debra's right to share in property her marital contributions helped produce.

■ Ken also cites *Storm v. Storm*, where the court held that a husband's inheritance was not divisible marital property.[13] But the

7. *Hughes v. Foster Wheeler Co.*, 932 P.2d 784, 793 (Alaska 1997) (citation omitted); *see also Lowe*, 944 P.2d at 34.

8. AS 25.24.200(a)(3); AS 25.24.160(a)(4).

9. *See Ferguson v. Ferguson*, 928 P.2d 597, 600 (Alaska 1996); *see also Johns v. Johns*, 945 P.2d 1222, 1226 (Alaska 1997) ("[A] spouse's interest in an IFQ is his or her separate property to the extent that the size of the quota share is attributable to labor performed prior to the marriage, and marital property to the extent that it is attributable to labor performed during the marriage.").

10. Cf. *Lundquist v. Lundquist*, 923 P.2d 42, 49–50 (Alaska 1996) (holding that compensatory damages intended to replace lost fishing income for period during which parties were married are divisible marital property); *Bandow v. Bandow*, 794 P.2d 1346, 1348 (Alaska 1990) (holding that lost earnings component of annuity given to spouse in settlement of medical malpractice claim was marital property to the extent it replaced predivorce lost earnings); *Laing v. Laing*, 741 P.2d 649, 655–56 (Alaska 1987) (adopting

rule that non-vested pension rights, although speculative, are divisible marital assets).

11. *Ferguson*, 928 P.2d at 600.

12. *See Malone v. Malone*, 563 So.2d 1061, 1062 (Ala.Civ.App.1990) (stating that there is no divisible property interest in application for broadcast license valued at $100,000 to $300,000 absent guarantee that license would be granted); *Heggen v. Heggen*, 452 N.W.2d 96, 101 (N.D.1990) (holding that it was not clearly erroneous to exclude potential drought assistance payments from calculation of marital estate, given that receipt of such payments was speculative); *Branson v. Branson*, 411 N.W.2d 395, 397 (N.D.1987) (holding that failure to include anticipated future government farm support payments in parties' assets prior to equitable division was not abuse of discretion because receipt of future payments was speculative). Cf. *Cobb v. Cobb*, 107 N.C.App. 382, 420 S.E.2d 212, 214 (1992) (holding that future rights to timber on marital property, projected to earn $174,300 when timber is clear cut in 2007, are not divisible property).

13. *See Storm v. Storm*, 470 P.2d 367, 370 (Wyo. 1970).

rule that property acquired during marriage is presumptively marital does not apply to inheritances.[14]

We therefore conclude that the superior court did not err by treating the quota shares as divisible marital property.

### 3. *Civil Rule 60(b)*

Ken argues that the superior court lacked jurisdiction to grant relief to Debra because she filed her motion more than one year after the court entered the dissolution decree. If Rule 60(b)(1) or (2) applied, as Ken argues, Debra's motion—filed twenty-two months after the decree was entered—would have been untimely, depriving the superior court of jurisdiction to grant relief.[15]

■ Rule 60(b)(1) applies when there has been "mistake, inadvertence, surprise or excusable neglect."[16] Ken contends that Debra's failure to anticipate the IFQ program and to protect her interests was a "mistake" justifying relief under Rule 60(b)(1).

We disagree. Rule 60(b)(1) is "traditionally applied ... to cover events that occur prior to entry of judgment, ... and not to those events which post-date the judgment."[17] The superior court properly found that Rule 60(b)(1) did not apply because the creation of the IFQ program and the award of the IFQs to Ken occurred post-judgment.

■ Ken also contends that Rule 60(b)(1) applies because Debra was well aware when the decree was entered that the quota share system would be implemented, but made a "mistake" by failing to ask the superior court to retain jurisdiction over the dissolution until any uncertainty about the existence of additional marital property was resolved.[18] We decline to consider this argument because Ken raises it for the first time in his appellate reply brief.[19]

■ Ken also argues that Rule 60(b)(1) applies because a change in the law created quota shares and IFQs. Rule 60(b)(1) allows a party to seek relief on the basis of a change in the law.[20] The superior court concluded that Debra's motion did not fall under Rule 60(b)(1) based on a change of law:

> The reason is that this is not a mere "change in the law," such as a change in the availability of pre-judgment interest (as was at stake in *Pearson* ), but is instead the *creation* of an entire governmental entitlement program which created in the parties to this dissolution wealth of a comparatively enormous amount.

We agree with that reasoning.

■ Ken also asserts that Rule 60(b)(2) applied. It authorizes relief based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[21] The superior court concluded that the quota share program was not "newly discovered evidence" because it was created after the dissolution.

Ken does not discuss the superior court's treatment of this issue, demonstrate any possible facial error in the court's analysis, or cite any supporting legal authority. Because

---

14. See *Lundquist,* 923 P.2d at 49.

15. See Alaska R. Civ. P. 60(b); *Lowe v. Lowe,* 817 P.2d 453, 457 (Alaska 1991) ("Under Alaska Civil Rule 60(b), the superior court lacks subject matter jurisdiction to set aside judgments unless a motion is made within the Rule 60(b) time limits.").

16. Alaska R. Civ. P. 60(b)(1).

17. *Olson v. Olson,* 856 P.2d 482, 484 (Alaska 1993) (citing 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2858 (1973 & Supp.1993)).

18. Cf. *Johns,* 945 P.2d at 1226–27 (holding that superior court did not abuse its discretion by retaining jurisdiction over party's interim per-

mits); *Laing,* 741 P.2d at 657–59 (endorsing "reserved jurisdiction" method to divide pension rights if and when they become vested).

19. See Alaska R.App. P. 212(c)(3); *Petersen v. Mutual Life Ins. Co.,* 803 P.2d 406, 411 n. 8 (Alaska 1990) (holding that argument was waived because appellant failed to "advance any legal argument as to why the court erred" in main brief).

20. See *Pearson v. Bachner,* 503 P.2d 1401, 1402 (Alaska 1972).

21. Alaska R. Civ. P. 60(b)(2).

Ken does not adequately brief this issue, we decline to consider it.[22]

Rule 60(b)(6) authorizes relief for "any other reason justifying relief from the operation of the judgment."[23] We have held that the following factors may constitute extraordinary circumstances sufficient to reopen a property settlement agreement under Rule 60(b)(6): "(1) the fundamental, underlying assumption of the dissolution agreement had been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the [property in question] was the parties' principal asset."[24] These four factors are not strictly essential conditions; rather, they are "particular instantiations of the equitable factors required to overcome the principle that, at some point, 'litigation must be brought to an end.'"[25]

The superior court considered these factors and found extraordinary circumstances justifying relief under Rule 60(b)(6). The court reasoned: (1) the great relative value of the quota shares destroyed the fundamental underlying assumption of the settlement, a $50\!/\!50$ property distribution; (2) the settlement was not carefully thought out because the parties failed to mention the quota shares in the dissolution papers or in the hearing; (3) the parties had only limited contact with lawyers and had been unrepresented; and (4) the quota shares were more valuable than any single asset or perhaps even the sum of the entire marital estate.

■ We have not previously considered whether creation of a governmental program like this might justify Rule 60(b)(6) relief from a property settlement. But we have held in *Van Brocklin v. Van Brocklin*, that where a divorce decree does not settle the parties' property rights because all property issues were withdrawn from the court's consideration, a court may later divide the marital property on the motion of one of the former spouses.[26] *Van Brocklin* is distinguishable because the McGees' decree disposed of all their property other than the quota shares. And we have previously noted that "*Van Brocklin* does not necessarily authorize an independent action ... where the property division approved by the court and incorporated in the final divorce decree omitted a single asset."[27] The instant case requires us to decide whether a party may reopen a divorce decree when only one asset was omitted.

We hold that a party may do so under the circumstances presented here. The superior court properly considered the four applicable factors and concluded that extraordinary circumstances justified relief. Given the unusual structure of the quota share program, it was not an error to grant Rule 60(b) relief from the decree which did not address or anticipate this marital property. Debra only sought to reestablish the status quo of an equal division of property through her motion.[28]

■ We reject Ken's argument that the superior court erred by concluding that Debra's motion was filed within a reasonable time. Debra alleged that she did not learn of the implementation of the IFQ program until October 1994. The NMFS issued shares to Ken in December 1994 and January 1995. Debra moved to modify the dissolution decree in February 1995, no more than five months after she became aware of the change in circumstances. Moreover, the twenty-two-month delay between the entry of the dissolution decree and the filing of

**22.** *See Adamson v. University of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

**23.** Alaska R. Civ. P. 60(b)(6).

**24.** *Schofield v. Schofield*, 777 P.2d 197, 202 (Alaska 1989).

**25.** *Clauson v. Clauson*, 831 P.2d 1257, 1261 (Alaska 1992) (quoting *Lowe*, 817 P.2d at 459).

**26.** *See Van Brocklin v. Van Brocklin*, 635 P.2d 1186, 1190 (Alaska 1981).

**27.** *Johnson v. Johnson*, 824 P.2d 1381, 1382 n. 2 (Alaska 1992).

**28.** *See Clauson*, 831 P.2d at 1261 (approving of Rule 60(b)(6) modification of divorce decree to restore status quo when ex-husband unilaterally waived retirement benefits one-half of which ex-wife was entitled to).

Debra's Rule 60(b)(6) motion was within the range we have held to be "reasonable." [29]

### 4. *Estoppel*

■ Ken argues that Debra was estopped from seeking Rule 60(b) relief. He first argues that she delayed in raising her claim to the quota shares while he spent substantial sums on the F/V Tamarack in reliance on his expectation that he would receive all the quota shares. He further argues that the parties anticipated the quota share program, and that Debra agreed that Ken would receive all the quota shares.

We have described how a party may waive, and therefore be estopped from later litigating, a claim:

> "A waiver can be accomplished either expressly or implicitly. An implied waiver arises where the course of conduct pursued evidences an intention to waive a right, or is inconsistent with any other intention than a waiver, or where neglect to insist upon the right results in prejudice to another party. To prove an implied waiver of a legal right, there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right, or acts amounting to an estoppel by the party whose conduct is to be construed as a waiver." [30]

We have also stated that,

> Implied waiver created by neglect to insist upon a right "is, in reality, a type of equitable estoppel." It follows that "neglect to insist upon a right only results in an estoppel, or an implied waiver, when the neglect is such that it would convey a message to a

reasonable person that the neglectful party would not in the future pursue the legal right in question." [31]

We conclude, based on our review of the record, that implied waiver and estoppel do not bar Debra's quota shares claim. The record suggests that the parties intended to divide their assets equally. The vague reference to "permits" in one negotiating document does not persuade us that Debra agreed that Ken would receive all potentially valuable quota shares. Debra's alleged inaction does not amount to "direct, unequivocal conduct" that she meant to waive her legal right to quota shares.[32] And any possible neglect in failing to preserve a claim to quota shares at the time of the dissolution would not convey "a message to a reasonable person" that she "would not in the future pursue the legal right in question." [33]

■ Ken also argues that Debra is quasi-estopped because she asserted inconsistent positions regarding the quota shares. In *Smith v. Thompson*, we stated that a party may be quasi-estopped if he or she asserts a position inconsistent with one previously taken.[34]

Quasi-estoppel did not bar Debra's motion. She did not assert a position inconsistent with one she took previously. The quota shares did not exist as a marital asset at the time of the dissolution, and the record suggests that the parties intended to divide their assets equally.

We conclude that it was not error to grant relief under Rule 60(b)(6).

---

**29.** *See Lowe*, 944 P.2d at 32–33 (holding delay of four and one-half years may be reasonable); *Foster v. Foster*, 684 P.2d 869, 871 (Alaska 1984) (affirming grant of Rule 60(b) motion made after twenty-two months). *See generally Schofield*, 777 P.2d at 202 (considering delay between alleged change of circumstances and motion to modify, and delay between dissolution decree and motion, in determining whether motion was filed within reasonable time).

**30.** *Airoulofski v. State*, 922 P.2d 889, 894 (Alaska 1996) (quoting *Milne v. Anderson*, 576 P.2d 109, 112 (Alaska 1978)).

**31.** *State, Dep't of Revenue v. Valdez*, 941 P.2d 144, 153 n. 9 (Alaska 1997) (quoting *Wausau Ins.*

*Cos. v. Van Biene*, 847 P.2d 584, 589 (Alaska 1993)).

**32.** *See Airoulofski*, 922 P.2d at 894.

**33.** *See Valdez*, 941 P.2d at 153 n. 9.

**34.** *See Smith v. Thompson*, 923 P.2d 101, 105 (Alaska 1996); *see also Wright v. State*, 824 P.2d 718, 721 (Alaska 1992) ("Quasi estoppel appeals to the conscience of the court and applies where 'the existence of facts and circumstances mak[es] the assertion of an inconsistent position unconscionable.'") (quoting *Jamison v. Consolidated Util., Inc.*, 576 P.2d 97, 102 (Alaska 1978)).

### 5. Attorney's fees

 Ken argues that the superior court abused its discretion by awarding Debra $24,106 in attorney's fees under Civil Rule 82(b)(2) and (b)(3). The superior court emphasized that Ken was largely to blame for the litigation because he misrepresented his ownership of the F/V Tamarack.

The four-page order awarding fees contains a reasoned and prudent analysis of the potentially relevant circumstances. Ken has not demonstrated that the award was arbitrary, capricious, manifestly unreasonable, or the result of an improper motive.

We also reject Ken's argument that the award penalizes him for vigorously litigating a novel issue, chilling future litigation. The superior court observed that the issues were novel and that Ken was entitled to vigorously litigate his claims. But it apparently based the award largely on Ken's "indefensible" misrepresentation that led to the Rule 60(b) dispute. It was not error to do so.

Ken also argues that the "relative economic positions" standard rather than Rule 82 should have governed the fees issue, and that because Debra and Ken have relatively similar economic circumstances, no award is justified. Citing *O'Link v. O'Link*, he argues that Rule 82 applies only when an original property settlement is modified.[35] He contends that this action does not involve a modification of the original decree because it "involves property issues which were never raised or considered in the original decree."

We disagree. In *Lowe v. Lowe*, we approved the use of Rule 82 to award attorney's fees when a party prevailed on a Rule 60(b)(6) motion to modify a divorce decree, stating that "[t]he divorce judgment exception to Rule 82 does not apply to post-judg-ment modification and enforcement motions."[36] The superior court did not abuse its discretion by awarding attorney's fees under Rule 82 after it granted Rule 60(b)(6) relief to Debra.

### B. S–7965: The Tort Action

Debra argues that it was error for Judge Jahnke to dismiss her tort suit.

### 1. Standard of review

 Although the dismissal order did not invoke Civil Rule 56 or refer to summary judgment, it granted the relief Ken's summary judgment motion sought and appears to have been based on the court's review of materials outside the pleadings. We therefore treat it as a summary judgment.[37] " 'When reviewing a grant of summary judgment, the court must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts.' "[38] We review de novo an order granting summary judgment.[39] We may consider any argument ascertainable from the record, even if the superior court did not rule on it, when reviewing the summary judgment order.[40]

### 2. Res judicata (claim preclusion)

 The superior court dismissed Debra's tort action in part because she "impermissibly split her causes of action." The superior court gave res judicata effect to the Rule 60(b) proceeding, because the prohibition against "splitting a cause of action" is based on the principles of res judicata.[41]

Citing *Nelson v. Jones*, Debra contends that she did not have to join the tort action into the dissolution action.[42] She implies

**35.** *See O'Link v. O'Link*, 632 P.2d 225, 226–28 (Alaska 1981).

**36.** 817 P.2d at 460 (citing *L.L.M. v. P.M.*, 754 P.2d 262, 264 (Alaska 1988)).

**37.** *See Andrews v. Wade & De Young, Inc.*, 875 P.2d 89, 90–91 (Alaska 1994).

**38.** *Jackinsky v. Jackinsky*, 894 P.2d 650, 654 (Alaska 1995) (quoting *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992)).

**39.** *See id.*

**40.** *See id.*

**41.** *See* Jack H. Friedenthal, et al., *Civil Procedure* 617–22 (2d ed.1993).

**42.** *See Nelson v. Jones*, 787 P.2d 1031, 1034 (Alaska 1990).

that the superior court should never have examined whether her two actions were predicated on the same transaction.

We stated in *Nelson* that the principles of res judicata do not require tort claims between married persons to be litigated in their divorce proceedings, because that requirement would hinder the resolution of divorce actions.[43] But *Nelson* held only that res judicata did not require that interspousal tort claims be joined in the original divorce action.

Debra asks us to extend *Nelson*, and to hold that res judicata does not require that a tort claim be joined in a Rule 60(b) application that seeks relief from the original divorce or dissolution decree. As a result, tort actions filed after a party moves for Rule 60(b) relief would be exempt from the principles of res judicata.

In *Nelson* we approvingly quoted from a Wisconsin Court of Appeals opinion identifying reasons why divorce and tort actions should be litigated separately:

> Although joinder is permissible, the administration of justice is better served by keeping tort and divorce actions separate.... Divorce actions will become unduly complicated if tort claims must be litigated in the same action. A divorce action is equitable in nature and involves a trial to the court. On the other hand, a trial of a tort claim is one at law and may involve, as in this case, a request for a jury trial. Resolution of tort claims may necessarily involve numerous witnesses and other parties such as joint tortfeasors and insurance carriers whose interests are at

stake. Consequently, requiring joinder of tort claims in a divorce action could unduly lengthen the period of time before a spouse could obtain a divorce and result in such adverse consequences as delayed child custody and support determinations. The legislature did not intend such a result in enacting the divorce code.[44]

These well-articulated concerns strongly weigh against joint litigation of such claims. We conclude that they apply to a tort action filed after Rule 60(b) relief is sought in a divorce or dissolution matter. We are also persuaded in this case by the difficulty inherent in providing to Debra in the Rule 60(b) proceeding the same rights and remedies she would have been entitled to in her tort action, e.g., a jury trial and an opportunity to seek punitive damages.[45] For these reasons, res judicata does not bar a tort action based on the same claim as a party's prior Rule 60(b) motion.

### 3. *Collateral estoppel (issue preclusion)*

■ Although principles of res judicata do not bar Debra's tort action, we conclude that collateral estoppel barred the re-litigation of Debra's entitlement to the quota shares.[46] The superior court dismissed Debra's tort action, stating that Debra "impermissibly split her causes of action, because the matter is moot, and because the second claim is merged with the dissolution case, and barred by the decision in the dissolution case." The fact that the superior court did not use the term "collateral estoppel" in its order does not prevent us from considering whether that doctrine applies.[47]

---

**43.** *See* 787 P.2d at 1034; *see also Delahunty v. Massachusetts Mut. Life Ins. Co.*, 236 Conn. 582, 674 A.2d 1290, 1296 (1996) (stating that doctrine of res judicata does not require all issues between spouses to be litigated in dissolution proceedings).

**44.** *Nelson*, 787 P.2d at 1034 (quoting *Stuart v. Stuart*, 143 Wis.2d 347, 421 N.W.2d 505, 508 (1988)).

**45.** *See* Restatement (Second) of Judgments § 26(1)(c) (1992):

> [Res judicata does not apply when t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limita-

tions on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief....

**46.** "The applicability of collateral estoppel to a particular set of facts is a legal question over which we exercise independent review." *Sever v. Alaska Pulp Corp.*, 931 P.2d 354, 359 n. 4 (Alaska 1996) (citing *State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947, 950 (Alaska 1995)).

**47.** *See Andrews*, 875 P.2d at 92 n. 8 (citing Restatement (Second) of Judgments ch. 3 intr. note (1982)); *Jeffries v. Glacier State Tel. Co.*, 604 P.2d

We apply a three-element test to determine whether collateral estoppel bars an action:

(1) collateral estoppel must be asserted against a party or one in privity with a party to the first action; (2) the issue to be precluded must be identical to that decided in the first action; and (3) the issue in the first action must have been resolved by a final judgment on the merits.[48]

The first element is undisputably present because the Rule 60(b) motion and the tort action involved the same parties.

The third element is also undisputably present. The grant or denial of a Rule 60(b) motion is a final judgment, despite a pending appeal.[49] Therefore, entry of Rule 60(b) relief was a final judgment.

The critical question is whether the Rule 60(b) motion and the tort action addressed identical issues. By filing her Rule 60(b) motion, Debra re-opened the property distribution agreement and litigated the question of her right to the quota shares. But the issue of whether Ken intentionally misrepresented his ownership of the boat was not litigated or decided in the Rule 60(b) proceeding. The superior court predicated Rule 60(b) relief solely on the property settlement, rather than on Ken's alleged misconduct.[50]

We therefore conclude that Debra is collaterally estopped from re-litigating her right to the quota shares, but that it was error to dismiss her entire tort action. Still outstanding is the issue of whether Ken's conduct was sufficiently outrageous to permit punitive damages; if it was, the amount of any punitive damages award is also in issue. We reverse and remand for further proceedings.

### 4. Attorney's fees

Because we have reversed the dismissal of Debra's tort suit, and because Debra is precluded from relitigating only one issue—her right to the quota shares—in the tort suit, Ken is no longer the prevailing party in the tort suit. It is therefore necessary to vacate Ken's attorney's fees award.

### IV. CONCLUSION

Because the superior court properly granted Debra's Rule 60(b)(6) motion, we AFFIRM in Case No. S-7966.

Because the Rule 60(b) proceeding resolved only one issue—Debra's entitlement to the quota shares—raised in the tort suit, we REVERSE the judgment in Case No. S-7965, VACATE the attorney's fees award, and REMAND for further proceedings.

4, 8 n. 11 (Alaska 1979) (noting that res judicata in broad sense includes doctrines of merger, bar, direct estoppel, and collateral estoppel).

**48.** Sever, 931 P.2d at 359 (citing United Cook Inlet Drift Ass'n, 895 P.2d at 950–51).

**49.** Cf. Calhoun v. Greening, 636 P.2d 69, 72–73 & n. 4 (Alaska 1981) (treating denial of Rule 60(b)

motion as final judgment for res judicata purposes because denial is appealable under Appellate Rule 202).

**50.** See Restatement (Second) of Judgments § 27 (1992) (determination in first action is conclusive in subsequent action if "the determination is essential to the judgment").