Avis D. McDOUGALL, Appellant,

v.

Lindsay LUMPKIN II, Appellee.

No. S–9133.

Supreme Court of Alaska.

Nov. 3, 2000.

Avis D. McDougall, pro se.

Lindsay Lumpkin II, pro se.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

### OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Avis McDougall appeals from rulings entered when she and Lindsay Lumpkin divorced. We vacate the property division and remand because it was both inequitable and based on clearly erroneous findings. We also vacate the alimony award and remand because of conflicts between that award and the property division, and because of unexplained contradictions between the superior court's oral and written findings. We affirm the award of joint legal custody because the superior court did not abuse its discretion in dealing with the custody issue.

## II. FACTS AND PROCEEDINGS

In 1997 Lindsay Lumpkin filed for a divorce from Avis Lumpkin (now Avis McDougall), his wife of sixteen years and the mother of their four daughters. Lindsay served in the United States Air Force during the marriage, rising to the rank of senior master sergeant, while Avis held the day-to-day responsibility for raising their daughters. Avis also sometimes worked in part-time jobs until 1991, when she began seeking a college degree. She continued to work as a homemaker and to pursue her degree at the time of the divorce.

Lindsay and Avis moved to Florida soon after Lindsay filed for divorce, but Lindsay continued to prosecute the divorce proceedings in Alaska. The superior court held a final divorce hearing in June 1998. Anchorage attorney William T. Ford appeared for Lindsay, who testified telephonically. Avis also testified telephonically but was not represented by counsel.

The superior court addressed five issues at the hearing: child custody, visitation, support for the three minor children, alimony, and the division of marital property. The court announced extensive oral findings and conclusions and directed Lindsay's attorney to prepare written findings of fact and conclusions of law. The superior court signed the proposed written findings of fact and conclusions of law without substantial change and entered a decree of divorce. Avis appeals.

## III. DISCUSSION

### A. Standard of Review

A superior court adjudicating a divorce or dissolution of marriage exercises broad discretion in dividing the marital assets.[1] As explained in *Wanberg v. Wanberg*,[2] a superior court must follow a three-part process when dividing marital property: "First, the trial court must determine what specific property is available for distribution. Second, the court must find the value of this property. Third, it must decide how an allocation can be made most equitably."[3] We review the classification of property for an abuse of discretion, although some items' classification may present questions of law to which we apply our independent judgment.[4] We will reverse a superior court's valuation of marital property only if it is clearly erroneous.[5] We review the property's equitable distribution for an abuse of discretion and will affirm unless the division is "clearly unjust."[6]

We apply an abuse of discretion standard when reviewing a superior court's awards of rehabilitative alimony[7] and child custody.[8]

---

1. See *Tybus v. Holland*, 989 P.2d 1281, 1284 (Alaska 1999).

2. 664 P.2d 568 (Alaska 1983).

3. *Id.* at 570.

4. See *Tybus*, 989 P.2d at 1284.

5. *See id.*

6. *Id.*

7. See *Virgin v. Virgin*, 990 P.2d 1040, 1043 (Alaska 1999).

8. *See id.; Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970).

## B. *The Property Division*

■ Did the superior court equitably divide Avis and Lindsay's marital property? Alaska Statute 25.24.160(a)(4) provides that the court may divide marital property "in a just manner." We have held that "[i]n the absence of findings to warrant an unequal division ... an equal division of the marital estate is presumptively the most equitable."[9] An unequal division can be condoned when it is justified by relevant factors identified in the superior court's findings.[10]

The parties' primary assets included Lindsay's military retirement, a home in Florida, and three undeveloped lots. Their debts included a mortgage on the Florida home, a loan secured by the vacant lots, credit card debts, and student loans.

The superior court found that Avis was entitled to one-half of Lindsay's military retirement benefits that had accrued during the marriage. The superior court also allocated the parties' real property: their Florida home, two undeveloped lots in Florida known as Marion Oaks #10 and Marion Oaks #34, and a vacant lot in Colorado known as Baca Grande. The court orally accepted Avis's pretrial valuation of the properties: $34,000 for Marion Oaks #10, $14,000 for Marion Oaks #34, and $9,900 for Baca Grande.[11] The Florida home was worth $95,900, but the balance on its mortgage loan was $97,212.60, creating a negative value of $1,312.60.

As Avis agreed, the court awarded the Florida home and responsibility for its mortgage to Avis. Avis also received the unencumbered Baca Grande lot worth $9,900. Lindsay received the two Marion Oaks lots valued together at $48,000, encumbered only by a $6,375.91 loan on Marion Oaks #10. Lindsay therefore received real property with a net value of $41,624.09 and Avis received real property with a net value of $8,587.40.

The superior court ordered Lindsay to pay the marital credit card debt of $5,960.91. It ordered Avis to assume responsibility for "her" student loans, including those incurred during the marriage. The loans incurred during the marriage totaled $22,822 when the parties separated.

This division of assets and debts therefore gave Lindsay net assets worth $35,663.18 and Avis net assets worth negative $14,234.60.

Lindsay did not submit an appellate brief but by motion indicated his agreement on appeal with the superior court's findings and conclusions.

We rely here on the property values provided by Avis and orally accepted by the superior court. Based on these figures, Lindsay and Avis began the divorce proceeding with a combined net worth of $21,428.58. After the superior court divided their property, Lindsay received assets and debt having a net value of $35,663.18; Avis received assets and debt having a net value of negative $14,234.60. Thus, the superior court awarded Lindsay $49,897.78 more than it gave Avis. Even if all the student loans were properly treated as nonmarital, the resulting division would have given Lindsay marital property worth $35,663.18, and Avis marital property worth $8,587.40, a difference of about $27,000.

The findings and evidence in the record do not justify this grossly inequitable division. An equitable property division is presumptively fifty-fifty, absent any statutory or equitable factors justifying a different division.[12] The factors discussed in AS 25.24.160(a)(4)(A)-(I) do not justify awarding Avis less than fifty percent of the marital wealth. Nor does the record reveal any equitable basis for doing so. We therefore

---

9. *Miles v. Miles*, 816 P.2d 129, 131 (Alaska 1991).

10. *See Hayes v. Hayes*, 756 P.2d 298, 300 (Alaska 1988). Relevant factors for possible deviation from a presumptive equal division are found in AS 25.24.160(a)(4)(A)-(I).

11. Although the written findings and conclusions prepared by counsel refer vaguely to possibly lower values for these properties, the appellate record contains no evidence of other values. The superior court's oral findings explicitly relied on Avis's pretrial valuations, and her figures were nearly identical to the values contained in Lindsay's initial financial declaration.

12. *See Miles*, 816 P.2d at 131; *Hayes*, 756 P.2d at 300; *Wanberg*, 664 P.2d at 574-75.

vacate the property division and remand for an equitable division.

Avis also argues on appeal that Lindsay received his own IRA as part of the property settlement. The record does not reveal whether the superior court considered Lindsay's IRA. It did not mention the IRA in its oral or written findings and conclusions. The status of Lindsay's IRA must be clarified on remand. Our discussion of the property division has not addressed the possible effect of the IRA.

### C. The Student Loans

■ The superior court orally found that although the student loans were incurred "in the course and conduct of the marriage," they were deferred as long as Avis was a full-time student. It orally found that the loans were "more significantly traceable and allocated directly to Mrs. Lumpkin." The written findings and conclusions explained that "[t]he benefits of these student loans to her and her education will accrue to her alone."

Avis had submitted a pretrial memorandum and an affidavit asserting that Lindsay had supported her pursuit of higher education, and indicating that they had sometimes used the student loans to pay living expenses and non-educational debts. Lindsay offered no evidence to rebut Avis's sworn statements. The superior court's written findings acknowledged that Avis "testified that a portion of the money from the student loans was used for family purposes," but found that the majority was used to benefit her own education. Given the evidence, we conclude that it was an abuse of discretion to treat the unpaid student loans incurred before separation as non-marital debt. They should have been treated as marital debt

subject to division under AS 24.25.160(a).[13] We remand so the student loans can be reclassified as marital debt.

■ Nor can we affirm on a theory that the student loans are marital debt that can be entirely allocated to Avis. We have never required either that student loan debt be treated as non-marital debt, or that the student-spouse pay the student loan debt regardless of the parties' economic position. To the contrary, in both *Tybus v. Holland*[14] and *Notkin v. Notkin,*[15] we held that the superior court did not abuse its discretion by allocating student loan debt to the non-student spouse.[16] Avis was very clearly economically disadvantaged, and her uncontroverted testimony was that she pursued her education as part of a family plan. The statutory factors outlined in AS 25.24.160(a)(4) do not justify such an inequitable division of this debt.[17] Absent any evidence that she incurred these debts as part of an agreement that she begin this education at her expense in anticipation of divorce, the timing of the loans and the circumstances made these debts subject to an equitable division.

We conclude that it was an abuse of discretion to assign Avis full responsibility for the student loan debts incurred during marriage to further her education.

### D. The Relationship Between the Property Division and the Alimony Award

■ Avis claims that the superior court conflated the property and alimony issues in its oral and written findings.

■ Usually the parties' assets and liabilities must be divided without regard to any

13. Not at issue here is an additional $3,716 of student loan debt incurred after separation.

14. 989 P.2d 1281 (Alaska 1999).

15. 921 P.2d 1109 (Alaska 1996).

16. *See Tybus,* 989 P.2d at 1286 (holding that superior court "committed no error" in allocating wife's student loan debt to husband with greater earning capacity); *Notkin,* 921 P.2d at 1113–14 (holding that superior court did not abuse its discretion by requiring husband to pay

off wife's outstanding student loan obligations, because wife's earning capacity was "low").

17. *See generally* AS 25.24.160(a)(4)(A) ("the length of the marriage and station in life of the parties during the marriage"); AS 25.24.160(a)(4)(C) ("the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities of children during the marriage"); AS 25 .24.160(a)(4)(D) ("the financial condition of the parties").

alimony award. We held in *Ulsher v. Ulsher*[18] that "[a]n alimony award is separate from a property division. Payments that do not divide property cannot be considered part of a property division."[19]

The record suggests that the property and alimony awards did not respect this distinction. The oral findings stated: "I think that the allocation of the marital assets to Mr. Lumpkin with a—the $500.00 payment over four years is fair and equitable under the circumstances as long as Baca (ph) Grande is—is given to Mrs. Lumpkin." This suggests that the property division may have been used to balance the legally unrelated alimony award.[20]

Moreover, the written findings and conclusions awarding the Baca Grande property to Avis contained the following provision in the part titled "Rehabilitative Spousal Support": "[I]f the parties agree, the husband may continue to pay the sum of $500.00 per month in spousal support for an additional two (2) years, in exchange for the return of the Colorado (Baca Grande Lot # 1232) property to him." The oral findings included a similar provision. Thus, if Lindsay agreed, Avis could trade a piece of property worth $9,900 when they separated for two years more of alimony valued at $12,000 when received. Such a trade-off was inappropriate if it was intended to resolve Avis's pretrial request for extended alimony. Courts may permissibly provide for periodic payments to effect equitable property divisions,[21] and may divide property in a way that helps a spouse become financially independent. But the trade-off language used here implies that the alimony and property division issues may not have been treated independently. And if the trade-off provision was meant to be a substitute for alimony, it was not contingent on Avis's need, but turned on Lindsay's agreement. On remand, the parties' property must be divided without regard to alimony.

### E. Duration of Alimony

The court's oral findings and conclusions ordered Lindsay to pay Avis rehabilitative alimony of $500 per month for four years, finding that amount to be "fair and equitable." But the written findings and conclusions prepared by counsel and entered by the court did not specify the duration of the alimony. When Avis objected to the written findings' lack of specificity concerning the duration of the alimony award, the superior court entered an addendum specifying that alimony would be payable for two years; the addendum did not explain the contradiction between the amended term and the oral findings or why the duration of the alimony was being reduced.

Avis argues that the superior court abused its discretion by reducing the duration of her alimony award from four years to two years.

Although it would not necessarily have been an abuse of discretion to have awarded alimony of two years (or six years) at the hearing, the conflict between the oral findings, the initial written findings, and the addendum was resolved without explanation, even though the result reduced the original award by fifty percent and a total of $12,000. We are consequently unable to review the reasoning behind the reduction. On remand, the duration of the alimony award should be clarified, and if it differs from the term found orally, the court should explain its reasons for the different result. This reconsideration of the alimony award must not be inappropriately affected by the property division.

Avis also argues on appeal that she deserved an additional two years of alimony so that she could complete an M.B.A. She acknowledges that she never explicitly asked the superior court for an additional two years of alimony. But she correctly notes that she explained to the court that her educational plan included getting a master's degree, and

**18.** 867 P.2d 819 (Alaska 1994).

**19.** *Id.* at 821–22.

**20.** *But see, e.g., Hammer v. Hammer,* 991 P.2d 195, 199 (Alaska 1999) (noting that extended alimony may be awarded when insufficient property exists to eliminate differences between spouses' earning capacities through an unequal property division).

**21.** *See, e.g., Hunt v. Hunt,* 698 P.2d 1168, 1171 (Alaska 1985) (ordering husband to pay wife for her share of business in equal monthly installments for three years at 10.5% interest).

her trial exhibits indicated that she was studying business administration to prepare for an M.B.A. program. We express no opinion concerning the merits of Avis's argument that she should receive six years of alimony. When the superior court reconsiders its alimony award, Avis may ask the court to consider her effort to improve her economic prospects by pursuing an M.B.A.

### F. Military Retirement: the QDRO and the Insurance

■ Avis argues that the superior court abused its discretion by failing to enter a qualified domestic relations order (QDRO) to protect her interest in Lindsay's retirement benefits.

The superior court orally recognized at the hearing that a "direct order" would be necessary to guarantee that Avis received her share of Lindsay's retirement when the military began to pay Lindsay; Lindsay's attorney represented to the court that he was familiar with such orders and would be "doing the paperwork anyway," implying that he would prepare and submit the necessary order for consideration by the court. The written findings and conclusions contain no provision guaranteeing that Avis will receive her share of the retirement payments and the record contains no QDRO.

We have held that "[t]rial courts have discretion to distribute retirement benefits to a non-employee spouse through either a qualified domestic relations order (QDRO) or through a lump sum payout."[22] The superior court orally opted for entry of a "direct order," which we take to be a QDRO. This was an appropriate choice. But it was error to fail to enter the order required to protect Avis's interests and we must remand for entry of the necessary order.

■ Avis also argues that it was an abuse of discretion not to require Lindsay to insure his military retirement account. We agree.

We held in *Zito v. Zito*[23] that "an agreement for equitable division of retirement benefits earned during marriage presumptively encompasses survivor benefits."[24] We remanded with instructions to amend the QDRO to provide for a "survivor benefits" clause to ensure that the ex-wife be treated as a "surviving spouse" should her former husband predecease her.[25] Here, Avis either needs life insurance to protect her interest in Lindsay's military retirement or a clause in the QDRO that will require the Air Force to treat her as a surviving spouse if Lindsay predeceases her. On remand, the superior court should ensure that Avis's interest is protected appropriately.

### G. Joint Legal Custody

The superior court awarded the parties joint legal custody of the three minor children, but recognized that Lindsay's frequent absences overseas meant that Avis would make most major decisions regarding the children.[26] On appeal Avis argues that it was error not to give her sole legal custody.

■ Avis never expressly sought sole legal custody at trial, but her pretrial memorandum stated that she "doesn't see how [joint legal custody] will work." We consider this issue absent any argument that Avis failed to preserve this argument for appeal.

On appeal Avis asserts that she and Lindsay have difficulty communicating, and points to the trial comment of Lindsay's attorney that Lindsay "does not have a particularly good relationship with Mrs. Lumpkin and— and would prefer not to have to contact her." The superior court nonetheless concluded, "Mr. Lumpkin it's uncontroverted has been responsible in dealing with his children's educational needs, that he has been providing a sufficient amount of well, a significant amount of support and there is a basis for granting of joint legal custody." The superior court continued: "This decision to award

---

**22.** *Nicholson v. Wolfe,* 974 P.2d 417, 425–26 (Alaska 1999).

**23.** 969 P.2d 1144 (Alaska 1998).

**24.** *Id.* at 1148.

**25.** *See id.* at 1147–48.

**26.** Lindsay had agreed that Avis should have primary physical custody of the three minor daughters. The oldest daughter was an adult at the time of the divorce.

joint legal custody is done because I think the parties can work out major differences. It's not meant to be a hindrance for Mrs. Lumpkin who will need to continue to make those primarily—primary on the spot decisions."

 No evidence in the record justifies a conclusion that the superior court abused its discretion by awarding joint legal custody of the children.[27] We therefore affirm this award.

### H. *Other Rulings*

Finally, Avis argues on appeal that the superior court failed to follow its own oral findings regarding the nurture and care of the parties' minor children. Avis's pretrial memorandum sought entry of provisions (1) ensuring ongoing support for children over eighteen if they were seeking further education; (2) splitting educational expenses for children attending college; (3) requiring Lindsay to provide health care coverage for the children through his employer until Avis completes her degree program, and to share medical costs while the children attend college; (4) requiring life insurance of $201,000 to secure the child support, and the children's educational obligations; and (5) requiring cost-of-living increases in child support. Avis argues on appeal that although the superior court "orally adopted [these] provisions," the written findings and conclusions failed to address these issues.

 The superior court's written findings and conclusions directly and adequately addressed most of these requests. First, the superior court found that "the father has indicated that he intends to help his children with their college education and has indicated that he will use his best efforts to do so." Lindsay's counsel had announced at the hearing that Lindsay planned to help his children when they attend college, and Avis presented no evidence that would justify a conclusion that the court's finding was clearly erroneous. Moreover, Lindsay's "best efforts" undertaking was too general to create

an enforceable obligation to pay half of the expenses. The superior court's finding therefore adequately addresses Avis's first two requests—supporting the children while in school, and sharing higher education expenses—and part of the third request—sharing health expenses for children in college.

 The other alleged omissions do not require reversal, either. The superior court ordered Lindsay to provide health insurance coverage for the children, and to continue to do so after his eventual discharge from the Air Force. The court ordered that uninsured costs should be borne equally by the parties to a maximum of $5,000, and then allocated pro-rata between the parties· according to their respective incomes. It also required Lindsay to maintain life insurance covering his child support obligation. The court did not state a dollar figure, as Avis had requested, but the orders are consistent with the essence of Avis's pretrial memorandum's request: that payment of child support be ensured should Lindsay die. Finally, Avis asked for a cost-of-living adjustment for the child support payments. Alaska Civil Rule 90.3, which governs child support, does not require cost-of-living adjustments. The superior court might have corrected Avis's misunderstanding, but did not err in failing to do so or by declining to impose an obligation not required by Rule 90.3.

### I. *Discrepancies Between the Oral and Written Findings*

 Lindsay's trial attorney did not incorporate in the written findings several of the court's oral findings although the court directed him to do so in the following language: "I am going to direct Mr. Ford to prepare the findings and conclusions consistent with my oral findings and conclusions set forth here on the record and the final decree of divorce and any other orders necessary for Mrs. Lumpkin to obtain her benefits in the military retirement, et cetera." Despite these instructions, the proposed findings and conclusions failed to specify any duration for the alimony award. Nor did

---

27. *See Crane v. Crane,* 986 P.2d 881, 889 n. 18 (Alaska 1999) ("As we held in *Bell v. Bell,* 794 P.2d 97, 99 (Alaska 1990), legislative intent 'fa-

vors joint legal custody, regardless of the physical custody arrangement.' ").

counsel submit a proposed QDRO, although the court had asked that an appropriate order be prepared and counsel had reassured the court that he was familiar with such orders. Furthermore, the written findings interject speculation about different values for the marital property, although at the hearing the superior court had explicitly adopted Avis's valuations.

■■■ Counsel agreeing to draft written findings and conclusions for the superior court is essentially a scribe who must accurately memorialize the court's oral findings and conclusions.[28] Especially if the opposing party has no lawyer and is less able or less likely to mount an effective challenge to the proposed written findings, counsel must take extra care to ensure faithful and accurate renditions of the court's rulings.[29] If·counsel has questions about what a court has ruled or perceives ambiguity, the proper course is to flag the issue so that the court may revisit it.

■ An attorney's failure to submit written proposed findings conforming to the oral findings does not relieve a trial court of responsibility for confirming that the written findings reflect the court's thinking.[30] The responsibility here was shared. Counsel cannot expect the court to compare the tape of its oral findings and conclusions with the proposed written findings and conclusions; the court is entitled to assume that counsel will scrupulously comply with the court's request to prepare findings and conclusions that are "consistent" with the court's oral findings and conclusions.

One result of the discrepancies in this case is an appeal that might have been avoided in whole or in part.

## IV. CONCLUSION

For these reasons, we VACATE the property division, and REMAND for further proceedings regarding the property division and alimony issues, for entry of a QDRO, and for entry of provisions protecting Avis's interest in Lindsay's military retirement. We AFFIRM as to the remaining issues Avis raises, including the award of joint legal custody.

**28.** See Schoenberg v. Romike Properties, 251 Cal. App.2d 154, 59 Cal.Rptr. 359, 363 (1967) ("The busy trial judge has a right to expect that the attorneys will prepare suitable findings."); see also Robert N. Rosen, Postrial: Orders for the Court, 12 Fam.Advoc. 63 (1990) ("In preparing an order [containing findings of fact and conclusions of law]: ... [C]ounsel has an ethical duty to the court to submit an order that is consistent with the record, true and correct, and balanced in presentation so that it does not present only one side....").

**29.** In this case, Avis did challenge the written findings. Her arguments there, as well as in her advocacy at trial and on appeal, were thorough and capable. But this is an extraordinary exception to most such cases, and cannot justify any failure to be fair and accurate.

**30.** See Industrial Indem. Co. v. Wick Constr. Co., 680 P.2d 1100, 1108 (Alaska 1984) (noting that trial court should adopt findings and conclusions prepared by counsel only if "they reflect the court's independent view of the weight of the evidence").