NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DANIEL LIGHTFOOT ROGERS, | ) | |
| | ) | Supreme Court No. S-16128 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-14-02235 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| EENAOUAK MARY THERESA BABCOCK, | ) | AND JUDGMENT* |
| | ) | |
| | ) | No. 1615– February 15, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Appellant. No appearance by Appellee Eenaouak Mary Theresa Babcock.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.     INTRODUCTION

A divorcing couple disputed physical custody of their infant son. Following trial but pending a written order, the couple shared custody equally pursuant to the superior court's interim oral ruling. Both parents submitted proposed findings of fact and conclusions of law; the father's proposal continued equal sharing of physical

---

\*      Entered under Alaska Appellate Rule 214.

custody, but the mother's proposal divided custody 64/36 in her favor. The superior court signed both proposals without reconciling the inconsistency. In response to a motion for clarification the court amended its findings by adopting only the mother's proposal and rejecting the father's.

The father argues on appeal that the superior court erred by entering an order that substantially deviated from its oral rulings, without explanation. We agree. We therefore vacate the custody order and remand for further proceedings.

## II.    FACTS AND PROCEEDINGS

Theresa Babcock and Daniel Rogers were married in August 2012, and their son was born the following July. The couple separated about a year later.

In her complaint for divorce filed in August 2014, Babcock requested sole legal and primary physical custody and asked that the court allow Rogers only supervised visitation. Rogers responded by requesting 50/50 shared custody. At an early hearing on interim custody, the court found that the child was "probably more bonded to his mother," who "[i]s the one that[ ha]s been primarily caring for him," and the child therefore "should continue to have more time" with Babcock; the court also found, however, "that the father should have significant time with [the child] as well." The court accordingly awarded interim primary physical custody to Babcock until trial but granted Rogers "weekend visitation" every weekend from 5:00 p.m. Friday to 5:00 p.m. Sunday and "day visitation . . . at least twice a week" in alternating weeks.[1] The court set the divorce trial for June 2015.

---

[1]     Within these parameters, the court left the exact schedule up to the parties, documenting the interim schedule in a written order a few months later.

In their trial briefs, each party sought primary physical and joint legal custody, except that Babcock requested sole authority over educational decisions. After hearing the evidence the court announced that it was "prepared to make findings today on the record" but that it had limited time; it therefore intended merely to "giv[e] a sort of sketch of what I see should be ordered in this case," inviting the parties to submit more detailed findings afterward. The court awarded the parents joint legal custody. But it was "not prepared today to say what th[e] visitation schedule should look like," instead "hoping that counsel c[ould] submit something . . . workable with their clients' schedule[s]." Although not mandating a particular schedule, the court's comments made clear its conclusion that shared custody was in the child's best interests. It observed that in order "to allow [the child] to have contact with both families, the children in both families, [and] his extended family, . . . [physical custody] should be shared to the greatest degree possible." It noted that shared custody would give the child "a better opportunity to participate in weekend activities with either parent." The court recalled that the interim custody arrangement gave Rogers weekends and two days of visits during alternating weeks and observed that adding another overnight for Rogers would "get[] a little closer to the shared custody arrangement, not quite there." To guide the parties' negotiations the court suggested "frequent rotations" like "three days" or "three/four, four/three," because their son "needs to . . . see both of his parents" and "should [not] be away from either parent that long."

After discussing several other issues, the court reiterated its request that the parties submit proposed findings of fact and conclusions of law. Setting the deadline for the proposals several weeks out, the court stated that its only worry was "the shared custody arrangement" and waiting a month to implement it. At Babcock's request, therefore, the court issued a temporary order to provide certainty in the interim. The

court again asked about the viability of three-four/four-three rotations and remarked that "a straight two-day rotation" is "actually the best, probably, for [the child]." Under the court's guidance, the parties agreed on the record to shared custody, alternating every three days, effective until the written order issued. They discussed how to implement the "[t]hree/three, three/three, three/three" rotation through mid-July, specifying dates for transitions.[2]

When the parties later submitted their proposed findings of fact and conclusions of law, they differed significantly in their proposals for custody. Rogers proposed that "[t]he parties shall have 50-50 shared physical custody, on a schedule to be agreed upon by the parties." But Babcock proposed that until their son started kindergarten, "[t]he parties shall share custody of [him] on 64% mother/36% father two week rotating schedule" with Rogers having approximately five days' custody every two weeks. She proposed that the schedule change once the child started kindergarten to accommodate the school week and summer vacation; at that point, the shares would change to 60/40 in her favor.

Rogers objected to Babcock's proposed findings. He argued that sharing physical custody "to the greatest degree possible" meant "50-50" and noted that "the parents are currently on a 3/3 schedule" pursuant to the court's interim order. He also noted that Babcock's proposal gave her custody on both Thanksgiving and Easter, and he flagged several other concerns.

The court signed both parties' proposed findings of fact and conclusions of law about eleven weeks after trial. It did not respond to Rogers's objections or

---

[2]    The parties modified this rotation for two weeks in July, though maintaining the 50/50 split. Rogers had custody for the week of July 4th, then Babcock took the following week to attend a pow-wow in Fairbanks.

reconcile the differences in custody shares, though it revised Babcock's proposed holiday schedule to alternate the Thanksgiving and Easter holidays between parents.

Babcock moved for clarification, noting that the two signed proposals were "inconsistent with each other in several important respects, including the implementation of the custody schedule." Rogers responded by also asking for clarification, adding that he was "very concerned with preserving his 50-50 shared physical . . . custody." The court issued an order noting that it had "inadvertently signed [Rogers's] proposed findings," and it reissued Babcock's proposal as the court's amended findings and conclusions, with no additional alterations besides the alternating Thanksgiving and Easter holidays. Rogers appealed; Babcock has not participated in the appeal.

## III. STANDARD OF REVIEW

"Superior courts have broad discretion in child custody decisions, and we will reverse only if findings of fact are clearly erroneous or if the superior court abused its discretion."[3] "[A] trial court abuses its discretion when it adopts, without explanation or change, proposed findings of fact and conclusions of law that substantially deviate from the court's earlier oral decision."[4]

## IV. DISCUSSION

### A. It Was An Abuse Of Discretion To Order A 64/36 Custody Split, Without Explanation, After Orally Finding That 50/50 Shared Custody Was In The Child's Best Interests.

Rogers argues that the court abused its discretion when it issued written findings that were inconsistent with its oral findings, and that the written findings, as an

---

[3] *Riggs v. Coonradt*, 335 P.3d 1103, 1106 (Alaska 2014) (citing *Ronny M. v. Nanette H.*, 303 P.3d 392, 399 (Alaska 2013)).

[4] *Ogden v. Ogden*, 39 P.3d 513, 518 (Alaska 2001) (citing *McDougall v. Lumpkin,* 11 P.3d 990, 998 (Alaska 2000)).

uncritical adoption of Babcock's proposal, fail to "reflect the court's independent view of the weight of the evidence."[5] We agree.

"Normally, when inconsistencies arise between a court's oral and written findings, the written decision prevails."[6] Such inconsistencies are often reconcilable and may present different analyses but not contradictory results.[7] Here, however, the inconsistencies cannot be reconciled. And the normal rule favoring the written decision "assumes that — and consequently only applies when — the trial court consciously made or endorsed the changes incorporated in its written decision."[8] When the court asks the parties or their attorneys to prepare proposed findings, "[i]t is the role of the superior court to ensure that any decree drafted by a party conforms to the court's own rulings."[9] That is, "[a]n attorney's failure to submit written proposed findings conforming to the

---

[5] *Harrelson v. Harrelson*, 932 P.2d 247, 250 n.2 (Alaska 1997) (quoting *Smith v. Smith*, 845 P.2d 1090, 1093 n.3 (Alaska 1993)).

[6] *Ogden*, 39 P.3d at 518 (citing *Lowe v. Lowe*, 944 P.2d 29, 33-34 (Alaska 1997)).

[7] *See, e.g.*, *Fyffe v. Wright*, 93 P.3d 444, 455 (Alaska 2004) (upholding the trial court's written decision where there was "no necessary contradiction between the oral and written decisions of the superior court"); *Lowe*, 944 P.2d at 34 (noting that the oral and written findings were not inconsistent but "provide separate, though not mutually exclusive, bases for concluding that the delay [in moving for relief from judgment] was reasonable").

[8] *Ogden*, 39 P.3d at 518; *see also Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 458 (Alaska 1974) (Boochever, J., concurring) ("While I believe that generally the written findings and conclusions should control, I do not regard such a rule as one that must be slavishly followed in all cases.").

[9] *Riggs v. Coonradt*, 335 P.3d 1103, 1109 (Alaska 2014) (citing *McDougall*, 11 P.3d at 998).

oral findings does not relieve a trial court of responsibility for confirming that the written findings reflect the court's thinking."[10]

In this case, although the superior court's oral remarks at the close of trial made clear that it was not prepared to lay out the details of a custody schedule, it unmistakably favored an arrangement as close as possible to 50/50 shared custody because such a schedule was in the child's best interests. The court found that "to allow [the child] to have contact with both families, the children in both families, [and] his extended family, . . . [physical custody] should be shared to the greatest degree possible." It repeatedly remarked that "a straight two-day rotation" was "probably" the best for the child, and while acknowledging the logistical difficulties in frequent changeovers it urged at least a "three/four, four/three" or "[t]hree/three, three/three, three/three" rotation.[11] The court's interim order pending the parties' submission of their proposals accordingly awarded 50/50 shared custody, changing every three days.

The amended order, dividing custody 64/36 in Babcock's favor, did not track the court's oral remarks. It reduced Rogers's time from seven days with his son every two weeks to only five. The loss of two days every two weeks was a substantial deviation.[12] Under similar circumstances we have remanded cases for an explanation of

---

**10** *McDougall*, 11 P.3d at 998 (citing *Indus. Indem. Co. v. Wick Constr. Co.*, 680 P.2d 1100, 1108 (Alaska 1984)).

**11** The court also discussed a "week on/week off" schedule, but was "really more in favor of those . . . shorter transitions." The weekly rotation option was also discussed as a 50/50 split.

**12** The written findings deviated from the court's oral findings in several other respects. The court orally stated that sharing weekends allowed the child "to participate in weekend activities with either parent," permitting him greater exposure to each parent's culture. But the written findings give Rogers weekend time with his son only

(continued...)

why such a deviation was justified. In *Havel v. Havel*, for example, we remanded for further findings where the record did not explain the superior court's adoption of a 60/40 custody schedule instead of the parties' agreed 50/50 schedule.[13] *In Riggs v. Coonradt* we remanded for clarification where the court departed from an earlier decree that the transition from weekend visits would occur Sunday evenings and signed, without explanation, proposed findings that delayed the transition until Monday mornings instead.[14]

Here, in addition to the substantial deviation between the court's written findings and its oral remarks, there is no indication that "the trial court consciously made or endorsed the changes incorporated in its written decision."[15] When it signed Babcock's order limiting Rogers's custody share, "[t]he superior court did not explain whether, or why, it was infeasible to divide time with the child more equally" and "made no explicit finding that it was in the child's best interest to reduce his time with his father by so much."[16] Although the court had the right to assume that the parties' proposals

---

[12](...continued)
after 3:00 p.m. on Sundays. While the schedule gave Rogers the majority of weekend time after the child began kindergarten, moving to a 60/40 split, it continued to disparately favor Babcock. Additionally, although the court orally discussed a gradual increase in Rogers's vacation time, this "graduated schedule" did not impact the custody shares over time.

[13]     216 P.3d 1148, 1152-54 (Alaska 2009).

[14]     335 P.3d at 1108-09.

[15]     *Ogden v. Ogden*, 39 P.3d 513, 518 (Alaska 2001).

[16]     *See Havel*, 216 P.3d at 1153 (concluding that the superior court abused its discretion by adopting master's order modifying custody from 50/50 split to 60/40 without explaining why it reduced the father's time with his child); *see also Ogden*,
(continued...)

would substantially reflect its own findings of fact following trial,[17] the court still shared responsibility for "ensur[ing] that any decree drafted by a party conform[ed] to the court's own rulings."[18]  Babcock's proposal did not.

Because the superior court's written findings substantially deviate, without explanation, from its oral findings about the custody arrangement that best served the child's interests, the record does not support the final award of custody on a 64/36 shared basis.

## V.     CONCLUSION

We VACATE the superior court's amended custody order and REMAND for further proceedings consistent with this opinion.  We do not retain jurisdiction.

---

[16](...continued)
39 P.3d at 518-20 (remanding a custody decision because one party drafted the findings, deviated from the court's oral findings without indicating it had done so, and delayed submitting the proposed findings, which the court then signed almost immediately and without revision or explanation); *McDougall v. Lumpkin*, 11 P.3d 990, 998 (Alaska 2000) (remanding to the superior court where it signed proposed written findings and failed to explain the deviations from its prior oral findings).

[17]      *McDougall*, 11 P.3d at 998 ("[T]he court is entitled to assume that counsel will scrupulously comply with the court's request to prepare findings and conclusions that are 'consistent' with the court's oral findings and conclusions"); *see also Schoenberg v. Benner*, 59 Cal. Rptr. 359, 363 (Cal. App. 1967) ("The busy trial judge has a right to expect that the attorneys will prepare suitable findings."), *cited with approval in McDougall*, 11 P.3d at 998 n.28.

[18]      *Riggs*, 335 P.3d at 1109 (citing *McDougall*, 11 P.3d at 998).