*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RANDALL WARD WOLFFE, | ) | |
| | ) | Supreme Court No. S-19082 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-23-04354 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ROBIN WOLFFE, | ) | |
| | ) | No. 7779 – August 1, 2025 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, David A. Nesbett, Judge.

Appearances: Randall Ward Wolffe, pro se, Port Orchard, Washington, Appellant. Notice of nonparticipation filed by Rory Butler, Law Offices of Blake Fulton Quackenbush, Anchorage, for Appellee.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

CARNEY, Justice.

## I. INTRODUCTION

When a couple divorced, the superior court awarded them joint legal custody of their minor child, but awarded primary physical custody to the mother. The court also divided the couple's marital estate.

The father, representing himself, appeals. He argues that the division of the marital estate was inequitable. He claims that a number of the court's

determinations were made in error, including not crediting him for post-separation payments, not allowing him to apply for the child's Permanent Fund Dividend (PFD), not allowing him to claim the child as a dependent for tax purposes, and its custody decision.

We vacate the court's division of the marital estate. The court's treatment of the father's 401(k) is unclear and there are no clarifying findings for our review. It was also legal error to fail to address post-separation payments when the court divided the marital estate. We therefore remand for further proceedings on these issues. We otherwise affirm the superior court.

## II.    FACTS AND PROCEEDINGS

Randall and Robin Wolffe married in Texas in May 2017 and Randall adopted Robin's minor child. In July 2017 the family moved to Alaska.

The couple bought a home in early April 2020. Around October 2022 they separated. Robin moved out of the house and Randall stayed in it. Randall has since moved outside Alaska.

Robin filed for divorce in January 2023, seeking sole legal and primary physical custody of their child, child support, and the authority to claim the child as a dependent for tax purposes and the child's PFD. She proposed that the court divide the couple's property in accordance with her spreadsheet. Randall responded by requesting joint legal and shared physical custody, and that the parents alternate years for claiming the child for taxes. He also requested that the court divide their property according to his spreadsheet.

In December 2023 the superior court held a one-day trial by videoconference. Robin and Randall each testified; neither called additional witnesses.

Robin testified that they had taken out a loan of $35,000 to remodel their home. She said that she was not aware of two other loans until just before court proceedings began. She testified that four credit cards were in Randall's name alone, and that she did not know what much of the credit card debt was for. In her spreadsheet

Robin proposed that Randall receive the entire amount of his 401(k) retirement account ($31,315.97).

Randall, who was representing himself, subsequently testified that he had not seen their child in a long time, and that his relationship with the child had been strained since Robin moved out, but that it had been good in the past. He showed the court text messages he had sent Robin seeking updates on the child. He testified that he had incurred expenses after separation related to the couple's debt and marital bills, the mortgage, and getting the house ready to sell. Randall denied Robin's claim that she had no access to the credit cards or knowledge of their use. He argued that the credit card debt and the other payments he had made since Robin moved out should be included in the property division as expenses to preserve marital property.

Randall conceded that the parties' camper was marital property, and he proposed splitting the camper loan equally with Robin. Randall's spreadsheet indicated that Robin would keep the couple's Toyota vehicle and a different trailer, but he requested credit for half of each item's value at the time of separation.

The parties sold their home in December 2023. They had previously agreed that Randall would be reimbursed for post-separation repair costs to get it ready to sell; and they had agreed that the lien on the house for a bathroom remodel would be paid off with the sale proceeds.

The day after trial and before the court had ruled, Robin filed a "notice regarding the sale of home." In it she notified the court that two amounts had been deducted from the home sale's proceeds: a Child Support Services Division (CSSD) lien for $26,353.76 and an escrow shortage of $11,404.59. She stated that the court should value her share of the home at $46,374.55, asserting that was her share of the equity before the CSSD lien was deducted. She asserted that she should also receive credit for half of the amount of the escrow debit because the shortage was Randall's responsibility.

The superior court issued a decree of divorce and findings of fact and conclusions of law in April 2024. It awarded joint legal custody to both parties and gave primary physical custody of the child to Robin.

In its division of real property, the court took into account the CSSD lien for Randall's child support arrearage of $26,353.76. The court also agreed with Robin that she should be awarded $5,702.30 as "half of the equity lost by the escrow debit."

The court then added the CSSD lien amount of $26,353.76 to the home sale proceeds of $66,395.35, resulting in a total of $92,749.11. Then it divided that total in two to determine Robin's fifty percent share ($46,374.55), unpenalized by the deduction of the CSSD lien.

The court next added half of the debit from the escrow shortage accrued while Randall was responsible for the mortgage, $5,702.30, to Robin's fifty percent share. Robin's total award from the home sale was therefore $52,076.85.

Turning to the couple's vehicles, the court awarded the trailer and Toyota to Robin as agreed, but did not award Randall half of their value. The court assigned debts to each party based on their testimony and Robin's spreadsheet. It assigned the entire camper loan to her.

The court assigned the debt from the four credit cards in his name to Randall and assigned the other loan debts according to Robin's spreadsheet. The court ordered that Robin would be responsible for the child's PFD and that she could claim the child as a dependent for tax purposes.

The court ordered that Randall's 401(k) be "divided equitably between the parties according to the [spreadsheet] provided to the court [by Robin]." That spreadsheet assigned Randall the full and undivided amount of the account, $31,315.97, as Robin had proposed. Randall's spreadsheet, on the other hand, had proposed that the 401(k) be split equally with Robin.

Randall appeals, continuing to represent himself. He argues that each decision the court made was in error. More specifically, he asserts that the overall

division of property was inequitable. He argues he should be credited for expenses after separation including monthly payments on the camper, a storage unit while the house was being sold, "tens of thousands of dollars on the maintenance required to sell the house," and certain past medical expenses. And he argues that the court did not divide marital debts equitably. He disagrees with the court's decision to allow Robin to claim the child on her taxes and apply for the child's PFD. Finally, Randall asserts that the court overlooked Robin's alienation of the child from him in its custody determination.

## III.  STANDARD OF REVIEW

We review the trial court's allocation of property for an abuse of discretion.[1] "Equitable division of marital assets by the superior court involves a three-step procedure. First, the trial court must determine what specific property is available for distribution. Second, the court must find the value of this property. Third, it must decide how an allocation can be made most equitably."[2] "An abuse of discretion occurs if the court considers improper factors, fails to consider relevant statutory factors, or assigns disproportionate weight to some factors while ignoring others."[3] We will not reverse the trial court's allocation of property unless the division was clearly unjust.[4]

"We review for abuse of discretion a superior court's decision whether to give a credit to a spouse for payments made to maintain marital property, such as the family home."[5] "We have required that trial courts consider payments to maintain

---

[1]    *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015) (quoting *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013)).

[2]    *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983).

[3]    *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005).

[4]    *Id.*

[5]    *Beal v. Beal*, 209 P.3d 1012, 1016 (Alaska 2009) (quoting *Berry v. Berry*, 978 P.2d 93, 95 (Alaska 1999)).

marital property from post-separation income when dividing marital property."[6]  In addition to "consider[ing] whether [a party] should be given credit for contributions . . . [the court] should make written findings on this point."[7]  If the court's property division denies a credit, but no findings explain its reasoning for doing so, then "[w]e must [] determine whether the record supported [a party's] request for a credit.  If it did, th[e] issue cannot be decided as a matter of law, and the failure to make fact findings on the issue cannot be considered harmless."[8]  And we have recognized that the superior court has broad discretion in the equitable distribution of PFDs for children.[9]

Finally, "[w]e review visitation awards, custody arrangements, and the accompanying best-interests determinations for abuse of discretion."[10]  "Generally, we will conclude that a trial court abused its discretion only when we have a definite and firm conviction, after reviewing the whole record, that it erred in its ruling."[11]

## IV.   DISCUSSION

We look first at Randall's challenges to the court's division of the marital estate.  We then turn to his arguments relating to the child, including the court's decision

---

**6**      *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992) (citing *Doyle v. Doyle*, 815 P.2d 366, 369 n.5 (Alaska 1991)); *see also Berry*, 978 P.2d at 96.

**7**      *Ramsey*, 834 P.2d at 809.

**8**      *Berry*, 978 P.2d at 96; *see also Ramsey*, 834 P.2d at 809.

**9**      *See Hayes v. Hayes*, 922 P.2d 896, 901 (Alaska 1996).

**10**      *Skinner v. Hagberg*, 183 P.3d 486, 489 (Alaska 2008) (citing *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190 (Alaska 1987)) (visitation); *Ginn-Williams v. Williams*, 143 P.3d 949, 952 n.3 (Alaska 2006), *superseded in part on other grounds by statute*, Gulf Opportunity Zone Act of 2005, Pub. L. No. 109-135 § 404(a), 119 Stat. 2577, 2633-34 (codified as amended at 26 U.S.C. § 152(e)), *as recognized in Aubert v. Wilson*, 483 P.3d 179, 187 n.22 (Alaska 2021) (custody arrangements and best interests determinations).

**11**      *Skinner*, 183 P.3d at 489 (citing *Vezey v. Green*, 171 P.3d 1125, 1128 (Alaska 2007)).

about the child's PFD, the ability to claim the child as a dependent, and its custody determination.

**A.      The Division Of Proceeds From The Sale Of The Marital Home Was Not An Abuse Of Discretion.**

The parties do not dispute that the home is marital property, and they agreed to sell it and equally split the net proceeds from its sale. But Randall argues the court's final division of the proceeds was "grossly inequitable."

Before the court began its division of the house proceeds, it first noted Randall's substantial child support arrearage.[12] And the court also found that the escrow shortage was due to Randall's failure to keep up with house payments. Having found that both of these debts were Randall's responsibility, the court decided not to require Robin to share that responsibility. To accomplish that, the court added the CSSD lien amount ($26,353.76) to the sale proceeds ($66,395.35), which resulted in $92,749.11. It divided that amount in two to calculate each party's equal share: $46,374.55. Randall does not dispute this calculation or share.

Next, the court addressed the escrow shortage of $11,404.59 which "accrued while Randall was responsible for the mortgage." The court found that Robin's "half of the equity lost by the escrow debit" was $5,702.30, and agreed with Robin that awarding that amount to her was reasonable. Randall does not directly object to the court's addition of one-half of the equity amount to Robin's share. However, he suggests that the court was wrong to hold him "solely responsible for accrued shortages totaling $11,404.59." The result of the court's calculations was that Randall remained responsible for amounts that arose from his actions. The size of each party's share of

---

**12**      The court had ordered Randall to pay child support of $1,968 monthly for the period of October 2022 through March 2023, and $2,100 monthly beginning in April 2023.

the home proceeds, however, no longer remained equal. The court awarded Randall $14,318.50 and Robin $52,076.85 of the $66,395.35 home sale proceeds.

Randall analogizes to *McDougall v. Lumpkin*, where we reversed a court's property distribution order that awarded roughly $27,000 more to one party than the other.[13] He claims that "Robin was awarded three and a half times the amount" that he received: $78,430.61[14] versus $14,318.50. Randall asserts that the difference in the amounts he and Robin were awarded, in light of *McDougall*, demonstrates that the division was not equitable.

However, *McDougall* does not offer Randall the support he seeks. The trial court in that case had assigned an entire student loan debt incurred during marriage to the wife who was "very clearly economically disadvantaged."[15] We concluded that making her solely responsible for the debt was an abuse of discretion because our previous cases[16] and the statutory division of marital property factors[17] required that the court consider, among other factors, the earning capacity of the parties.[18] Here, the court began its analysis with the expectation that the parties would equally share the house proceeds. Only after it assigned him responsibility for outstanding obligations

---

[13]     *See McDougall v. Lumpkin*, 11 P.3d 990, 993-94 (Alaska 2000).

[14]     Randall's argument relies on an arithmetic error, but his assertion that Robin's share is much greater would still apply to the correct amount of $52,076.85.

[15]     *McDougall*, 11 P.3d at 994.

[16]     *Id.* (citing *Tybus v. Holland*, 989 P.2d 1281, 1286 (Alaska 1999) and *Notkin v. Notkin*, 921 P.2d 1109, 1113-14 (Alaska 1996)).

[17]     *See* AS 25.24.160(a)(4)(A)-(I).

[18]     *McDougall*, 11 P.3d at 994. We were also concerned in *McDougall* that the court had improperly conflated the property division and the alimony award, and directed that "[o]n remand, the parties' property must be divided without regard to alimony." *Id.* at 994-95.

for which he was solely responsible was his share reduced. The court did not abuse its discretion.

**B.  The Court's Treatment Of The 401(k) Is Unclear And Its Findings Are Insufficient For Appellate Review.**

Randall also argues that the court abused its discretion by ordering that his 401(k) be equitably divided.[19] He acknowledged that the 401(k) is a marital asset and proposed dividing it equally with Robin. Robin, on the other hand, proposed that Randall keep the 401(k) in its entirety. The superior court ordered that "the current value of [the 401(k)] will be divided equitably between the parties according to [Robin's spreadsheet]."

It is unclear to us what the court intended. It is possible that the court intended Randall to receive the full amount of his 401(k), as indicated by Robin's spreadsheet. It is also possible that "divided equitably between the parties" meant the account was to be split between Robin and Randall, as Randall proposed. The court made no findings that allow us to discern its meaning. This lack of findings means that we are unable to review the basis for its decision, whatever its intent.[20] We therefore vacate the court's decision with regard to the 401(k) and remand for further findings to clarify its decision.

**C.  It Was Legal Error Not To Make Findings Regarding Post-Separation Payments.**

Randall argues he "spent tens of thousands of dollars on the maintenance required to sell the house" and the court failed to take those expenses into account. Randall also states that he made payments from non-marital income to preserve marital property such as insuring the Toyota, paying for a storage unit for Robin's property

---

[19]  Randall also argues he should have been credited part of the values of the Toyota and trailer. However, both items are marital property that the parties agreed should go to Robin. The court did not abuse its discretion.

[20]  *See Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

while the house was being sold, making monthly payments on the camper, and paying other marital bills, including the child's extracurricular activities. He argues that the court failed to consider any of these payments, even though he and Robin had agreed that he should be reimbursed for the home repairs. Randall argues that the court was required to make factual findings regarding the payments and repairs he made to maintain marital property after separation.[21]

In its discussion of child custody and support, the court acknowledged that Randall had spent his separate funds on "other marital financial obligations" including home maintenance, car insurance, credit card bills, and possibly the child's extracurricular athletics.

But the court did not mention those expenses in its property division discussion. Instead the court considered only the division of the proceeds from the home sale, Randall's retirement accounts, and both parties' personal property and debts. The court made no factual findings about Randall's post-separation payments, nor did it consider giving him credit for them, as we directed in *Ramsey v. Ramsey*.[22]

In *Ramsey* we held "that the superior court has discretion to award credit for post-separation payments made to preserve marital assets."[23] And we required that the court make "factual findings sufficient for review" and that "the findings must clearly indicate the court's consideration of a *Ramsey* credit and its rationale for awarding one or not."[24] It is not enough for the superior court to grant or deny a credit — its explanation of its decision "must be explicit and sufficiently detailed to give this

---

[21]     *See Stanhope v. Stanhope*, 306 P.3d 1282, 1293 (Alaska 2013) (first citing *Beal v. Beal*, 209 P.3d 1012, 1023 (Alaska 2009); and then quoting *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992)).

[22]     834 P.2d at 809; *Hall v. Hall*, 446 P.3d 781, 782 (Alaska 2019).

[23]     *Hall*, 446 P.3d at 782 (citing *Ramsey*, 834 P.2d at 809).

[24]     *Id.*

court a clear understanding of the basis of the trial court's decision."[25] It was legal error for the superior court not to do that.[26]

### D. The Custody Award Was Not An Abuse Of Discretion.

After weighing the best interest factors for determining custody,[27] the court gave Robin primary physical custody. As a result, it determined that Robin was the appropriate parent to claim the child on her tax returns and to file for the child's PFD. The court noted that both parents agreed Randall's relationship with their child was strained since their separation. And given the child's age, the court found that the best interest factor accounting for the child's preference[28] weighed in Robin's favor. The court found that the love and affection existing between the child and each parent[29] and the stability factor[30] also weighed in favor of Robin. It recognized that Randall's relationship with the child "has been good in the past and can be good in the future."

---

[25] *Id.* at 784 (quoting *Berry v. Berry*, 978 P.2d 93, 97 n.15 (Alaska 1999)).

[26] Randall also argues he was unfairly required to pay off marital debt including the couple's credit cards and loans, and that he "has made and continues to make all the payments to ensure no marital property is . . . lost." The court heard conflicting testimony from Randall and Robin about this debt. It did not abuse its discretion by finding Robin's testimony credible and her proposed treatment of the debts "reasonably fair and equitable under the circumstances."

[27] *See* AS 25.24.150(c)(1)-(9) ("In determining the best interests of the child the court shall consider [multiple factors].").

[28] The court found that the "[child] is of sufficient age and capacity to express a preference but the parties decided not to call him as a witness, there was no custody investigation interview, and there was no indication on the record directly from [the child] as to his preference." *See* AS 25.24.150(c)(3) (directing courts to consider "the child's preference if the child is of sufficient age and capacity to form a preference").

[29] *See* AS 25.24.150(c)(4) (directing courts to consider "the love and affection existing between the child and each parent").

[30] *See* AS 25.24.150(c)(5) (directing courts to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

The court acknowledged and Randall does not dispute that "since separation Robin has provided [the child] a consistent and stable living environment."

Randall argues that the superior court erred by "creat[ing] an environment where Randall cannot further his relationship" with his child, and that Robin alienated the child from him by blocking communication. We construe the briefs of self-represented litigants liberally,[31] and Randall appears to disagree with the court's failure to acknowledge the difficulties he faced trying to communicate with his child. But the court considered and weighed the required factors for determining child custody.[32] It observed that Randall's and the child's relationship was strained, and Randall did not raise specific arguments about the court's handling of any of those factors in his brief. The record supports the court's analysis of the statutory best interest factors.[33] Furthermore, the custody and visitation schedule ordered by the court was "generally acceptable to the parties" at trial. The court did not abuse its discretion in its custody award.[34]

---

[31] *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017).

[32] *See* AS 25.24.150(c); *Smith v. Weekley*, 73 P.3d 1219, 1225 (Alaska 2003) (holding superior court "need not specifically address the statutory factors . . . but its findings must either give us a clear indication of the factors which [it] considered important in exercising its discretion or allow us to glean from the record what considerations were involved.") (internal quotations omitted).

[33] *See* AS 25.24.150(c).

[34] Randall also objects to the court's order that visitation would "likely occur first in Alaska," claiming that he would have to "travel to Alaska out of pocket to see [his child] before he [could] have any sort of custody." Other than observing that visitation in Alaska would require his return to the state, Randall's objection is unclear. We therefore cannot address it. The court did not assign visitation costs and Randall seems to object to the court's decision not to require the parents to split costs associated with visitation. However, Robin has physical custody and Randall moved out of state, and the court found Randall's and the child's relationship to be strained. The court did not abuse its discretion by recognizing that Randall will likely have to travel to Alaska to see the child.

Having awarded Robin primary physical custody, the court did not abuse its discretion by authorizing her to file for the child's PFD and to claim the child as a dependent for tax purposes.

## V.    CONCLUSION

We VACATE the superior court's property distribution and REMAND for further proceedings consistent with this opinion.  We AFFIRM the custody order.